VIRGINIA HOLDER (FORMERLY VIRGINIA POLANSKI), PLAINTIFF-APPELLANT, v. BENJAMIN H. POLANSKI, DEFENDANT-RESPONDENT.

Argued February 17, 1988—Decided August 9, 1988.

346

*Robert B. Reed,* argued the cause for appellant (*Robert B. Reed,* attorney; *Mindy S. Goldberg,* on the brief).

*William W. Goodwin, Jr.,* argued the cause for respondent (*Gebhardt & Kiefer,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

Plaintiff, Virginia Holder (formerly Polanski), and defendant, Benjamin H. Polanski, formerly husband and wife, separated on April 1, 1985, and were divorced by a judgment dated September 19, 1986. Holder had a son by a prior marriage, and two children were born of her marriage to Polanski: Katie in 1980 and Melissa in 1982. The trial court denied Holder permission to move to Connecticut with the children. In an unreported opinion, the Appellate Division affirmed. We granted certification, 108 *N.J.* 656 (1987), and now reverse and remand to the Chancery Division, Matrimonial Part. We conclude that Holder justified her move to Connecticut but because Polanski has had residential custody of the children for nearly two years, a further hearing is necessary to determine the custodial arrangement that will be in the best interests of the children.

I

The record is sparse, but contains sufficient facts for the determination of this appeal. In the interim between their separation and divorce, Holder, who had physical custody of the children, stated that she wanted to move to Connecticut. Holder's reasons for the move included a desire to live near her sister and brother-in-law, who could provide her with emotional and financial support. Furthermore, her brother-in-law had offered her employment, and she planned to attend the University of Bridgeport. Finally, she said she wanted to put behind her the trauma of her divorce and the recent death of her parents. Polanski opposed the move for various reasons, primarily because of the distance between Flemington, New Jer-

sey, where they lived, and New Canaan, Connecticut. He contended that the housing, educational, and employment opportunities available to Holder in Connecticut were also available in New Jersey, and that there was no comparative advantage to her or their children in moving to Connecticut.

At the divorce trial, which was held on July 3, 1986, the court reserved decision on Holder's request to relocate with the children and directed her to provide more specific information on housing, education, and employment, which she provided on August 1, 1986. On September 2, 1986, the divorce judgment not yet having been entered, Holder renewed her request. In the interim, she had signed a one-year lease on a house in Connecticut, enrolled her son in high school, paid one-half year's tuition at a nursery school for Melissa, and signed a contract for the balance.

On September 19, 1986, the trial court denied Holder's motion. After acknowledging the sincerity of both parties, the court stated:

> There is no question in my mind that the move to Connecticut is in fact something which is beneficial to Virginia Holder * * * [a]nd I'm sure that in somewhat of a traditional sense she is willing to do her best and would in fact do her best to avoid inconveniencing Mr. Polanski, to avoid in any way alienating the children from him, that in fact she would or will in any event, no matter what happens here today, I think foster a relationship between the children and Mr. Polanski.

Although the benefits to her appeared to be substantial, the court found that Holder had not shown that the same benefits were not available in New Jersey. Nor had she established that it was in the best interests of the children to be away from Polanski. Consequently, the court entered an order denying Holder "permission to move to the State of Connecticut with the two children of the marriage; and she shall not remove the children from New Jersey without permission of defendant." In the divorce judgment, also entered on September 19, 1986, the court awarded physical custody of the children to Holder, and granted Polanski visitation rights on alternate weekends, certain holidays, and during the summer vacation. Because of

her prior commitments, Holder nonetheless moved to Connecticut and filed a motion to grant Polanski physical custody, as a result of which the court awarded him "residential custody" of the children and granted Holder visitation rights comparable to those previously granted to Polanski under the divorce judgment.

## II

In every divorce, the family unit is broken, and the relationship between the parties irrevocably changed. When children are involved, one parent receives physical or residential custody and the other parent receives visitation rights. Alternatively, the parents may enter into an arrangement for joint custody. Formerly, custody of children of tender years was generally awarded to the mother. With increasing frequency, however, mothers and fathers now share the responsibility for the care and custody of their children and the support of the family. Consequently, courts have begun to make more frequent awards of custody to fathers and, in appropriate cases, to make joint custody awards. Nonetheless, in many instances, the mother still receives custody of the children, and the father is awarded visitation rights. Implicit in that arrangement is the right of the father to move elsewhere for virtually any reason. *D'Onofrio v. D'Onofrio,* 144 *N.J.Super.* 200, 207 (Ch. Div.), aff'd o.b., 144 *N.J.Super.* 352 (App.Div.1976). As men and women approach parity, the question arises when a custodial mother wants to move from one state to another, why not? Until today, our response has included the requirement that the custodial parent establish, among other things, a real advantage to that parent from the move. *Cooper v. Cooper,* 99 *N.J.* 42, 56 (1984). We now modify that requirement and hold that a custodial parent may move with the children of the marriage to another state as long as the move does not interfere with the best interests of the children or the visitation rights of the non-custodial parent.

Our analysis begins with *N.J.S.A.* 9:2–2, which provides:

[when] such children are natives of this State, or have resided five years within its limits, they shall not be removed out of its jurisdiction without their own consent, if of suitable age to signify the same, nor while under that age without the consent of both parents, unless the court, upon cause shown, shall otherwise order.

The heart of the statute is the requirement of establishing "cause" to justify removal of the children from this to another state. The purpose of that requirement, manifested also in the abiding concern of courts for children, "is to preserve the rights of the noncustodial parent and the child to maintain and develop their familial relationship." *Cooper v. Cooper, supra,* 99 *N.J.* at 50; *see also D'Onofrio v. D'Onofrio, supra,* 144 *N.J.Super.* at 204–05 (purpose of anti-removal statute is preservation of the mutual rights of the children and noncustodial parent to maintain and develop their relationship). Our problem is to balance those rights with the right of the custodial parent to seek a better life for himself or herself in this or another state. *Cooper, supra,* 99 *N.J.* at 55 (citing *D'Onofrio v. D'Onofrio, supra,* 144 *N.J.Super.* at 207).

As previously noted, the calculus for solving this problem includes the custodial parent's interest in freedom of movement as qualified by his or her custodial obligation, the State's interest in protecting the best interests of the child, and the competing interests of the noncustodial parent. *Id.* at 56. Under *Cooper,* "the custodial parent initially must show that there is a real advantage to that parent in the move and that the move is not inimical to the best interests of the children." *Ibid.* Once the custodial parent has made this threshold showing, courts must then consider three factors: the prospective advantages of the move, including its capacity for maintaining or improving the general quality of life of both the custodial parent and the children; the integrity of the custodial parent's motives in seeking to move, as well as the noncustodial parent's motives in seeking to restrain the move; and whether a realistic and reasonable visitation schedule can be reached if the move is allowed. *Id.* at 56–57.

In this case, the lower courts concluded with respect to the threshold showing that the move to Connecticut would not be inimical to the best interests of the children, but that Holder had failed to show a real advantage for the move. Both courts noted that she had failed to establish that the cost of living was lower in Connecticut or that superior housing, educational or job opportunities, or child care were available in that state. Although Holder could derive personal satisfaction and receive emotional support from her sister and brother-in-law, these benefits were not considered sufficient to satisfy the "real advantage" test of *Cooper. But see Vertrees v. Vertrees*, 24 *Mass.App.Ct.* 918, 919, 508 *N.E.*2d 868, 869 (1987) (Massachusetts' "real advantage" requirement satisfied by a showing of emotional and social advantages to be gained from moving closer to family members); *Signorelli v. Albano*, 21 *Mass. App.Ct.* 939, 940, 486 *N.E.*2d 750, 751 (1985) ("real advantage" requirement satisfied when custodial mother's new husband, with whom she had just had a baby, moved to New Jersey to start a higher paying job).

In reaching that result, the Appellate Division decision is in line with other decisions of that court supporting the requirement that more than a personal advantage to the custodial parent is required for permission to remove children to another state. *See Helentjaris v. Sudano*, 194 *N.J.Super.* 220, 224–25 (App.Div.) (in addition to moving closer to family members, proposed area provided job with better hours and working conditions and lower cost of living), certif. den., 99 *N.J.* 200 (1984); *Middlekauff v. Middlekauff*, 161 *N.J.Super.* 84, 94–95 (App.Div.1978) (relocation permitted because custodial mother could not otherwise attend higher education classes in Manhattan and continue to spend time with the children); *D'Onofrio v. D'Onofrio, supra*, 144 *N.J.Super.* at 208–11 (relocation allowed because, in addition to benefit to custodial mother in being closer to her family, standard of living and physical environment of mother and children will be considerably improved).

We believe, however, that the focus of the "cause" requirement should not be on the benefits that will accrue to the custodial parent but on the best interests of the children and on the preservation of their relationship with the noncustodial parent. From that perspective, the "cause" requirement of *N.J.S.A.* 9:2–2 implicates the best interests of the child as manifested through visitation with the noncustodial parent. *Cooper v. Cooper, supra,* 99 *N.J.* at 50; *D'Onofrio v. D'Onofrio, supra,* 144 *N.J.Super.* at 204–05. Short of an adverse effect on the noncustodial parent's visitation rights or other aspects of a child's best interests, the custodial parent should enjoy the same freedom of movement as the noncustodial parent. *See Wilkie v. Culp,* 196 *N.J.Super.* 487, 496 (App.Div. 1984) (the law favors visitation and protects against the thwarting of visitation rights), certif. den., 99 *N.J.* 243 (1985); *In re Jackson,* 13 *N.J.Super.* 144, 145, 147 (App.Div.1951) (visitation with noncustodial parent should be set up to encourage mutual affection); *Turney v. Nooney,* 5 *N.J.Super.* 392, 397 (App.Div. 1949) (happiness and welfare of child determining factor in custodial decision). This construction of *N.J.S.A.* 9:9–2, while recognizing the values that underlie her constitutional argument, avoids the necessity of addressing Holder's challenge to the statute as violative of her constitutional right to travel and to equal protection of the laws. *See Frontiero v. Richardson,* 411 *U.S.* 677, 93 *S.Ct.* 1764, 36 *L.Ed.*2d 583 (1973) (unconstitutional discrimination to require servicewomen to demonstrate that their husbands are dependent on them for support without requiring servicemen to make same showing regarding their wives); *D'Onofrio v. D'Onofrio, supra,* 144 *N.J.Super.* at 208 & n. 1 (declining to reach constitutional questions implicit in statute, "namely whether restraining the mother from leaving the state with the children who are in her custody offends either the equal protection provision of the Fourteenth Amendment or the fundamental constitutional right to travel").

To this extent, we modify the "cause" test that we announced in *Cooper* by holding that any sincere, good-faith

reason will suffice, and that a custodial parent need not establish a "real advantage" from the move. If the court should find that the purpose of the move is to thwart the noncustodial parent's visitation rights, that obviously will not satisfy the test. Here, however, Holder's motivation was to live closer to her relatives and to make a fresh start in life. This clearly was a sufficient explanation to justify her move to Connecticut.

The modification precipitates a further adjustment of the *Cooper* formula. Once the court finds that the custodial parent wants to move for a good-faith reason, it should then consider whether the move will be inimical to the best interests of the children or adversely affect the visitation rights of the noncustodial parent. Not every change in a visitation schedule will prejudice those rights, particularly if the noncustodial parent has not exercised them before the custodial parent seeks to move from the state. If the move will not substantially change the visitation rights, then the court should determine whether the move would be inimical to the best interests of the children.

If, however, the move will require substantial changes in the visitation schedule, proofs concerning the prospective advantages of the move, the integrity of the motives of the party, and the development of a reasonable visitation schedule remain important. *Cooper v. Cooper, supra,* 99 *N.J.* at 56–57. The emphasis, however, should not be on whether the children or the custodial parent will benefit from the move, but on whether the children will suffer from it. *See ibid.* Motives are relevant, but if the custodial parent is acting in good faith and not to frustrate the noncustodial parent's visitation rights, that should suffice. Maintenance of a reasonable visitation schedule by the noncustodial parent remains a critical concern, but in our mobile society, it may be possible to honor that schedule and still recognize the right of a custodial parent to move. In resolving the tension between a custodial parent's right to move

and a noncustodial parent's visitation rights, the beacon remains the best interests of the children.

■ On the record before us, it appears that Polanski's visitation rights would not have been substantially affected by Holder's move to Connecticut. Indeed, Holder persuasively argues that she could have moved to several places in New Jersey without contravening the statute and with a more adverse impact on Polanski's visitation rights. *See Helentjaris v. Sudano, supra,* 194 *N.J.Super.* at 230 (noting that mother's move to Ohio imposed no greater visitation burden than would have resulted from a move to southern New Jersey). Furthermore, the move apparently would have left the children as well situated as they are in New Jersey with respect to medical treatment or educational opportunities. Consequently, we conclude that Holder should have been permitted in 1986 to move to Connecticut with her children. We recognize, however, that in this as in many custody cases, we are confronted with a living record. Accordingly, a remand is necessary to reconsider the best interests of the children. In remanding, we acknowledge that Polanski has had "residential custody" of the children for the past two years. Although Holder should have been permitted to move to Connecticut in 1986, the issue on remand will not be, as it was then, whether she should move to that state, but what custodial arrangement is in the best interests of the children at the present time.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Chancery Division, Matrimonial Part.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN–7. join in this opinion.

*For affirmance*—None.