705 A.2d 1204

ANDREW LEVINE, PLAINTIFF–APPELLANT, v. ROSEMARY
LEVINE BACON, DEFENDANT–RESPONDENT.

Argued January 21, 1998—Decided February 24, 1998.

*Drew M. Hurley*, argued the cause for appellant.

*Jennifer Weisberg Millner*, argued the cause for respondent (*Szaferman, Lakind, Blumstein, Watter & Blader*, attorneys).

PER CURIAM.

We affirm the Appellate Division's decision that the trial court properly denied the motion of Andrew Levine, the custodial parent of Jessica Levine, to move Jessica to Florida. 297 *N.J.Super.* 224, 687 *A.*2d 1057 (1997). We add only the following observations to the Appellate Division's comprehensive opinion.

## I.

Plaintiff, Andrew Levine, and defendant, Rosemary Levine, Bacon were married on March 17, 1988. Jessica, the parties' only child, was born on October 6, 1988. In 1990, Andrew filed for divorce. A Final Judgment of Divorce was entered providing for joint custody of Jessica, with Andrew as the primary residential parent. Rosemary was ordered to pay child support. The judgment also established Rosemary's parenting time schedule, granting Rosemary a combination of weekend and midweek visits, two weeks summer vacation, and alternating holidays.

In 1992, Andrew married Valerie Levine, a psychologist. They live in Princeton. Rosemary married Dylan Bacon in 1994 and they have a daughter Savannah, who was born on August 3, 1993. The Bacons live in South Brunswick. Dylan is employed as the superintendent of an apartment complex where he receives a salary of $17,000 per year, housing for the family of an estimated value of $1000 a month, and health insurance. At the time of the trial, Rosemary was unemployed and an at-home mother for her daughter, Savannah. Since the trial, the Bacons have had another daughter, and Rosemary is now a part-time manicurist.

For thirteen years, Andrew managed a dry cleaning plant owned by his father. In November 1994, his father sold the business. As a condition of that sale, Andrew signed a covenant not to compete. Andrew claims that there was no possibility of continuing his employment with the new owners of the cleaners and that he could not find a dry cleaning plant manager position in those counties not precluded by the covenant.

Clean Pro, a Florida company, offered Andrew a position selling software systems used by dry cleaners. Andrew expects to move into a sales management position eventually, and claims that if he could find a similar position in New Jersey he would stay. Andrew plans to sell his home in New Jersey and buy one near Sarasota, Florida, which is twenty minutes from his parents' and Rosemary's parents' homes.

Andrew asked Rosemary to move her family to Florida, but she refused. Therefore, Andrew proposed an alternative parenting time schedule that includes several week-long visits throughout the year. Andrew also suggested that Rosemary could spend the money that would otherwise go to child support on airfare. Rosemary, however, argues that she cannot afford frequent trips to Florida and that the visitation would be insufficient. Rosemary is in arrears in her child support obligation.

On February 2, 1995, Andrew filed a motion seeking permission to move with Jessica to Florida. The court appointed an expert and the Mercer County Probation Department to do a removal

and custody evaluation. After a three-day hearing, the trial court denied Andrew's motion to move with Jessica to Florida. Although the court found that Andrew's reasons for the move were sincere, it concluded that the move would be inimical to Jessica's best interest. The court found that the demands of Rosemary's new family would make it impossible for Rosemary to exercise her parenting time rights under the parenting time schedule, that Rosemary would be unable to afford the cost of the trips to Florida, and that it would not be feasible for Rosemary's family to move to Florida.

The Appellate Division agreed with the trial court that the move would "be inimical to Jessica's best interests and adversely affect defendant's important visitation rights." 297 *N.J.Super.* at 243, 687 *A.*2d 1057. The court noted Jessica's close relationships with defendant, Dylan, Savannah, and her nearby cousins. The court emphasized "[t]he dramatic change in the amount and quality of time that defendant and Jessica would be able to spend together," concluding that it would "undoubtedly cause Jessica to suffer." *Id.* at 244, 687 *A.*2d 1057. Furthermore, the court found that the proposed schedule was not feasible because of defendant's financial constraints and familial obligations. *Ibid.* The distance between Florida and New Jersey is so great that in light of defendant's limited financial resources and her familial responsibilities, the move would substantially interfere with defendant's relationship with Jessica. *Id.* at 245–46, 687 *A.*2d 1057. Judge Kleiner dissented, concluding that the case should be remanded because of the trial court's failure "to consider other possible visitation schedules." *Id.* at 248, 687 *A.*2d 1057.

## II.

*N.J.S.A.* 9:2–2 provides that a minor child may not be removed by the custodial parent unless cause is shown. In *Cooper v. Cooper,* 99 *N.J.* 42, 56, 491 *A.*2d 606 (1984), the term "cause" was defined to require the custodial parent to show that "there is a real advantage to that parent in the move and that the move is not

inimical to the best interests of the children." Also, the Court held that after cause is shown for the move, the court must consider "the prospective advantages of the move in terms of its likely capacity for either maintaining or improving the general quality of life of both the custodial parent and the children;" the motives of both parents; and whether a reasonable parenting time schedule can be arranged. *Id.* at 56–57, 491 *A.*2d 606.

In *Holder v. Polanski,* 111 *N.J.* 344, 352–53, 544 *A.*2d 852 (1988), we modified the requirement set forth in *Cooper, supra,* 99 *N.J.* at 56, 491 *A.*2d 606 that a custodial parent establish a real advantage to move, and held that any good faith reason to move will suffice. Also, the court held that a parent may move the children if the move does not interfere with the best interest of the children or the parenting time of the noncustodial parent.

Since *Holder* and *Cooper,* lower courts have arrived at different conclusions depending on the facts of each case. Courts have rejected removal applications on the ground that extended periods of parenting time are not adequate substitutes for frequent contact between parent and child. See *Zwernemann v. Kenny,* 236 *N.J.Super.* 37, 45, 563 *A.*2d 1158 (Ch.Div.1988), *aff'd,* 236 *N.J.Super.* 1, 563 *A.*2d 1139 (App.Div.1989); *McMahon v. McMahon,* 256 *N.J.Super.* 524, 607 *A.*2d 696 (Ch.Div.1991). On the other hand, courts have also emphasized that the burden of proving that a parenting time schedule would be too burdensome is on the noncustodial parent. *See Murnane v. Murnane,* 229 *N.J.Super.* 520, 531, 552 *A.*2d 194 (App.Div.1989). Also, in considering the financial burden imposed by the transportation necessitated by the move, courts have considered the possibility of reducing child support or applying arrearages to travel costs. *See Harris v. Harris,* 235 *N.J.Super.* 434, 451–52, 563 *A.*2d 64 (Ch.Div.1989), *overruled on other grounds, Ohlhoff v. Ohlhoff,* 246 *N.J.Super.* 1, 586 *A.*2d 839 (App.Div.1991); *Murnane, supra,* 229 *N.J.Super.* at 530–31, 552 *A.*2d 194.

In *Winer v. Winer,* the Appellate Division held that, in denying the mother permission to relocate to Atlanta, the trial court had

failed adequately to consider alternative parenting time schedules. 241 *N.J.Super.* 510, 575 *A.*2d 518 (1990). Although the court agreed the move would adversely affect the father's parenting time, it held that the father had failed to satisfy his burden to produce evidence about an alternative schedule. Likewise, in *Horswell v. Horswell,* 297 *N.J.Super.* 94, 103, 687 *A.*2d 797 (1997), the Appellate Division criticized the trial court for not considering the benefits derived from living elsewhere, and for failing to balance the benefits against the adverse effects of the move. Also, the court criticized the trial court's failure to consider whether changes could be made to the parenting time schedule to enable the children to visit more often. *Ibid.*

Although we do not agree with the dissenting member of the Appellate Division panel that *Holder* required the trial court to examine *sua sponte* other possible parenting time schedules, 287 *N.J.Super.* at 253, 670 *A.*2d 1100, we do agree that the trial court should not limit itself to considering the first parenting time schedule offered by the parent. Alternative parenting time schedules should be submitted by the parties and courts should suggest other possible schedules. Changed circumstances and the passage of time are relevant factors that should be considered in determining parenting time schedules.

Courts should consider referring such issues to mediation. Mediation has proven to be a useful tool in resolving custody and visitation matters. It allows the parties to arrive at a solution that satisfies both their needs. Indeed, *Rule* 1:40–5(a) requires that complaints or motions involving a genuine custody or visitation issue shall be referred to mediation for "resolution in the child's best interests." In each vicinage mediation is available to help resolve custody and parenting time disputes. Of course, some parenting time disputes will not be solved by mediation and will go to court, as in this case.

### III.

The trial court considered plaintiff's proposed parenting time schedule and found it to be inadequate to preserve Jessica's

relationships with her mother and sister. In reaching that conclusion, the trial court considered Rosemary's family situation, the distance and time required for travel between New Jersey and Florida, and the financial constraints of both parties. The trial court's consideration of the parties' financial limitations on the ability to exercise parenting time was entirely appropriate. *Winer, supra*, 241 *N.J.Super.* at 521, 575 *A.*2d 518; *Harris, supra*, 235 *N.J.Super.* at 451–52, 563 *A.*2d 64. There would be a great financial burden no matter what schedule was developed. Even if the trips were lengthened, the costs would still be substantial. Although plaintiff has offered to pay some of the costs, his financial resources do not allow him to defray the costs. The financial burden would remain no matter what alternative schedule was developed. Consideration of those factors led the trial court to find that this proposed move and any other schedule would not be in Jessica's best interest. The trial court, therefore, did not abuse its discretion.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.