764 A.2d 449 (2001)
336 N.J. Super. 172
Kyron McCOY, Plaintiff-Appellant,
v.
Thomas J. McCOY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted November 15, 2000.
Decided January 5, 2001.
*450 John J. D'Anton, Ridgefield, attorney for appellant.
William J. Roca, Clifton, attorney for respondent.
Before Judges BAIME, CARCHMAN and LINTNER.
The opinion of the court was delivered by LINTNER, J.A.D.
Plaintiff, Kyron Henn-Lee, formerly Kyron McCoy, appeals an order of the Chancery Division, Family Part, denying her motion for permission to permanently move her daughter, Katherine Erin McCoy, from New Jersey to California. Plaintiff maintains that the Family Part judge erred in his application of the law to the facts established by the record. Defendant, Thomas McCoy, counters that the judge's conclusions that (1) plaintiff did not show a good faith reason for the move, and (2) the move would interfere with the best interest of the child, were supported by the factual record. We reverse and remand for further proceedings.
Plaintiff and defendant were married on April 12, 1991. Katherine was born on November 22, 1991. The infant suffered a stroke before she was born, which left her neurologically impaired. As a result, she is hemiplegic and wears a brace on her right leg, which is connected to her foot to help her walk. She has very little use of her right hand, for which she is given physical therapy. She also suffers from visual impairment and a seizure disorder, which has been treated with a fair amount of success with medication.
*451 The couple was divorced in June 1994. Pursuant to a property settlement agreement, they have joint custody of Katherine, with plaintiff having physical custody. Defendant's visitation consists of one evening per week, two weeks in the summer (which he carries out by the use of extended weekends), and alternating weekends and holidays. Defendant has exercised his visitation regularly, and enjoys a very close relationship with Katherine.
Both parties remarried in 1997. Defendant lives with his current wife, Lydia, who is employed as a first grade teacher in the Ridgewood Public School System and enjoys a good relationship with Katherine. Katherine has a close relationship with defendant's mother, as well as Lydia's parents. Lydia's mother gives Katherine piano lessons on a weekly basis which, considering Katherine's disabilities, is a tremendous accomplishment. At the time of the hearing, defendant was employed at Patent IKG in Paramus, where he has worked for five years and earns a salary of $30,000 per year, along with health benefits, including medical, prescription drug and vision coverage for himself, his present wife and Katherine.
Plaintiff is currently separated from her husband, Mr. Lee, and intends to file for divorce. In 1998, she began working as a freelance graphics designer performing administrative consultation on web sites. She earned a total of $47,000 of which $26,000 was paid by one company, Online Imaginations (Online), the balance coming from freelance work for other companies. She did not receive any medical benefits. In August 1998, plaintiff received a job offer from Online in California, which consisted of a salary of $45,000, medical benefits, and the potential for stock options in the event the company went public. The offer would permit her to work at the Online office during the time that Katherine attends school and makeup the remainder of the eight-hour workday at home, enabling her to be with Katherine after school hours. Plaintiff traveled to California to investigate housing and the school district to determine whether it had facilities for Katherine's special needs. After meeting with school administrators, teachers and a behavior specialist, she learned that there was a place for Katherine at the Rossier School. Plaintiff's proposal was to reside in Brea, California, which she describes as a quiet community. She intends to rent a three-bedroom condominium unit, which has two baths and a large kitchen. There is a pool and a playground associated with the condominium complex. The Rossier School, which is equivalent to the school currently attended by Katherine, is located in Garden Grove California, approximately ten to fifteen minutes away. Plaintiff testified that she has one or two good friends in California who could provide the same support for her in caring for Katherine, similar to her existing situation in New Jersey.
Currently, plaintiff has a dating relationship with Philip Aranbula, who lives in California and is also involved in an internet business. She testified that accepting the job in California would afford her advantages that would include a stable salary, medical benefits for herself and Katherine, and a more conducive climate for Katherine who has a history of asthma. She also indicated that she would not have to travel as much in California and would work fewer hours than she currently does as a freelance consultant, thus freeing up more time to spend with Katherine.
Plaintiff proposed the following visitation schedule for defendant: (1) two weeks between June and July coinciding with Katherine's two week break between the end of the school year and the beginning of a special session in July; (2) the entire month of August; (3) the school break periods occurring between Christmas and New Years, in February and April, totaling three weeks. According to plaintiff, this would afford defendant the same total time (66 days) that he currently enjoys. In addition, plaintiff proposed building a *452 web site, which would include the use of camera-computer technology to give defendant, his family and friends, the ability to communicate directly with Katherine on a daily basis and review her school work and records. Defendant would be afforded daily face-to-face communication with Katherine, albeit through an electronic medium.
Defendant testified that he felt it would hurt his relationship with Katherine if she was away from him for long periods of time. Both parties confirmed that Katherine's relationship with her grandparents is wonderful. Defendant and his wife maintain that it would be in Katherine's best interest to remain in New Jersey, given the love she receives from her extended family and the environment in which she is doing so well. Lydia also confirmed the close loving relationship Katherine has with plaintiff. She testified that, although at times she finds herself in a mothering position, she recognizes that she is not Katherine's birth mother. She does not believe that Katherine should be removed from her mother.
Defendant contends that the evidence, which demonstrates the significant support Katherine receives, justifies the trial judge's conclusion that a move to California would be adverse to Katherine's best interest.
In Holder v. Polanski, 111 N.J. 344, 544 A.2d 852 (1988), the Supreme Court modified the two-prong analysis previously established in Cooper v. Cooper, 99 N.J. 42, 56, 491 A.2d 606 (1984). It replaced the first prong which required that a custodial parent show a real advantage to the move, with the proviso that any good faith reason to move will suffice. The Court, however, retained the second prong which required that the move would be permitted only if it did not interfere with the best interest of the child or substantially change the visitation rights of the noncustodial parent. Levine v. Bacon, 152 N.J. 436, 439-40, 705 A.2d 1204 (1998). The elimination of the need to show a real advantage was based upon the realization of the disparate treatment of custodial and noncustodial parents. Holder, supra, 111 N.J. at 349, 544 A.2d 852. The Court observed that an award of custody unfairly inhibits the custodial parent from moving elsewhere, while giving the noncustodial parent the freedom to move about the country without restriction. Ibid. Thus, a trial judge's first inquiry is the motivation for the move. Any sincere good-faith reason for the move is sufficient. Id. at 353, 544 A.2d 852. In order to reach a determination that there is an absence of good faith on the part of the custodial parent, there necessarily must be a finding that the motivation behind the move is inspired by something other than good faith. For example, as stated in Holder, "[i]f the court should find that the purpose of the move is to thwart the noncustodial parent's visitation rights, that obviously will not satisfy the test." Ibid.
The trial judge's determination that plaintiff did not have a sincere good faith reason for moving to California, was not born out by the record. In finding that plaintiff failed to establish a sincere good faith reason for the move, the judge erred in his application of the standard established by Holder. Considering plaintiff's testimony concerning the need for a more stable salary, the judge found that there "might be a slight improvement, but I don't see a substantial benefit here." He went on to say:
She made no job search in New Jersey to find better employment, better terms of work.... It would seem to me that's also part of her duty of good faith, to show that the offer ... could not be duplicated here in New Jersey, and that she couldn't find full time employment in this area ... which would be comparable to the employment offer to her in California. That's another factor that reflects upon the good faith, sincere issue on behalf of the plaintiff.
The above findings make it clear that the judge based his determination of the absence *453 of good faith, in part, on the fact that the advantage plaintiff would gain in accepting a full time job with a stable salary represented only a "slight improvement." His finding that plaintiff failed to seek like employment in the metropolitan area likewise was tantamount to the application of the Cooper standard, which was specifically modified by Holder.
Plaintiff need not show an advantage, any good faith reason will suffice. Here, there was no testimony to contradict plaintiff's assertion that her reasons were based upon her desire to have the stability of a direct employee rather than to rely on the less secure status of an independent contractor consultant. The evidence reveals that the parties equally respect each other's close and loving relationship with Katherine. We are satisfied that plaintiff established a good faith reason to move to California. Although defendant contends that the move will adversely affect his visitation, he does not argue that the move is motivated by a desire to adversely affect defendant's visitation rights.
The judge also confused the inquiry concerning lack of any good faith reason with the second prong, requiring a determination of whether the move is inimical to the best interest of the child. In reaching his decision that good faith was not shown, he said:
It would seem to me that with a special needs child, any move from New Jersey to California may present some problems. It raises a red flag. She did not consult with [any] experts before coming to court with her application.
He went on to conclude:
Now that extended family will not be available in California to assist her. The cases that I read, or several of the cases involving relocation, specifically talk about extended family. In many of the cases, a mother is seeking to relocate to be with, or in close proximity, to extended family. That's not the case here. Here, plaintiff is seeking to remove the child from the child's extended family. That's a major factor here on the issue of good faith and sincerity.
Defendant's argument that the judge appropriately considered the prospective advantages of plaintiff's move as bearing on the issue of absence of good faith, because the move would require a substantial change in his visitation schedule, is misplaced. In Holder, supra, 111 N.J. at 353, 544 A.2d 852, the Court stressed that, where there is a substantial change in the visitation schedule, the prospective advantage of the move, the integrity of the party's motives, and the development of a reasonable visitation schedule are factors that should be considered in the determination of the second prong, whether the child will suffer from the move. The Court emphasized: "[m]otives are relevant, but if the custodial parent is acting in good faith and not to frustrate the noncustodial parent's visitation rights, that should suffice." Ibid. In our modern mobile society it may be possible to honor a visitation schedule and still recognize a custodial parent's right to move. In deciding between the two "the beacon remains the best interests of the children." Id. at 354, 544 A.2d 852.
Having determined that plaintiff did establish a good faith reason for her move, we next examine the trial judge's conclusions that the move would be contrary to the best interest of Katherine. The judge concluded that there was insufficient proof by plaintiff that her suggested visitation, which included daily internet communication, would be a comparable substitute for in-person weekly contact and communication with Katherine. He found:
I'm satisfied here that the defendant has been an active parent, actively engaged in the child's education, activities and day-to-day functions. That will not take place if the move to California is allowed.
So I find, number one, that plaintiff has not established her burden; and, number two, the evidence here does establish *454 that the essential relationship between father and daughter will be substantially altered in the event the plaintiff moves to California, and that will result in factors which are inimical to the best interests of the child. It will also adversely affect the parenting rights of the non-custodial parent.
Once a divorce occurs, the relationship a child has with both parents is irrevocably changed. D'Onofrio v. D'Onofrio, 144 N.J.Super. 200, 205-06, 365 A.2d 27 (Ch.Div.), aff'd, 144 N.J.Super. 352, 365 A.2d 716 (App.Div.1976). A child becomes more emotionally dependent on the custodial parent and, therefore, the best interest of the child requires taking into account the best interest of the custodial parent. Likewise, there is a strong interest in preserving and fostering the child's relationship with the noncustodial parent. Cooper, supra, 99 N.J. at 54-55, 491 A.2d 606. What is in the best interest of the child is a difficult issue which is fact sensitive, no two cases are alike. Id. at 58, 491 A.2d 606. As such, once there is a finding of good faith, the judge is required to balance the evidence presented by the parties bearing upon both the adverse and the positive effects on a child, as they relate to the custodial parent's right to move and the noncustodial parent's rights to visitation.
Every time a custodial parent moves to a distant location, the ability of the noncustodial parent to exercise visitation rights is adversely affected. Winer v. Winer, 241 N.J.Super. 510, 520-21, 575 A.2d 518 (App.Div.1990). However, that fact alone may not be contrary to the best interest of the child, so long as an alternate visitation schedule can be created that continues and preserves the relationship between the child and the noncustodial parent. Balancing the effects on a child with the rights of the parents, the judge should require alternative visitation schedules from both parties and suggest other possible schedules in an attempt to minimize the adverse effect that the move will have on the visitation rights of the noncustodial parent. Levine, supra, 152 N.J. at 441, 705 A.2d 1204.
Here, the judge merely stated the obvious conclusions that defendant's relationship will be substantially altered by the move, without exploring whether different visitation plans could be devised to accommodate and preserve the relationship the child has with her father and her extended family. In weighing the evidence, the judge failed to consider and make findings concerning the relationship that Katherine has with her mother and whether the evidence showed that the move would result in improvements in housing and schooling. The judge should have determined whether Katherine would benefit from the move by making findings of fact concerning plaintiff's testimony respecting her added job stability and the increased time she would have available to be with Katherine.
We believe that plaintiff's suggested use of the Internet to enhance visitation was both creative and innovative. Dismissing the suggested use of the Internet, the judge never focused on the actual alternate visitation schedule proposed by plaintiff and whether it was comparable to defendant's current schedule or inimical to the best interest of Katherine. We conclude that the judge failed to adequately consider alternative visitation plans. In reaching a determination, if the judge finds the actual visitation schedule offered by plaintiff is not sufficient, submission of alternative visitation schedules should be required in an attempt to arrive at a solution that assures the continued development of Katherine's relationship with defendant and recognizes plaintiff's right to move.
The evidence reveals that both parties are equally devoted to Katherine and have developed a close relationship despite having gone their separate ways. Their positive attitudes toward Katherine should not inhibit plaintiff's right to relocate, but instead be utilized by the judge as a foundation to support the move and, at the *455 same time, benefit Katherine. We, therefore, reverse and remand to require (1) further proof concerning alternative visitation schedules and (2) findings of fact, after weighing all the evidence, as to whether the proposed move is inimical to the best interest of Katherine.
Reversed and remanded for further proceedings consistent with this opinion.