970 P.2d 1074 (1998)
Teresa Jean McGUINNESS, Appellant,
v.
James Joseph Edward McGUINNESS, Respondent.
No. 30836.
Supreme Court of Nevada.
December 30, 1998.
*1075 Kirby R. Wells & Associates and Allison Herr Kainen, Las Vegas, for Appellant.
Marshal S. Willick, Las Vegas; Philip Beuth, Las Vegas, for Respondent.

OPINION
SHEARING, J.
On November 20, 1996, appellant Teresa McGuinness (Teresa) filed for divorce from her husband, respondent James McGuinness (James). On November 21, 1996, Teresa filed a motion requesting that the district court designate her as the primary physical custodian of the parties' only child, Colin, and award her child support. James filed a countermotion seeking primary physical custody of Cohn.
At a February 1997 hearing on these motions, the district court ordered the parties to share joint legal and physical custody of Colin with each parent having physical custody for one-half of a week pending finalization of the divorce.
In March 1997, Teresa filed a motion asking to be granted primary physical custody of Colin and for permission to relocate to West Virginia with him. In the motion to relocate, Teresa maintained that as a result of her mother's recent death, she desired to return to her childhood home in Wheeling, West Virginia, to be close to her siblings. Teresa explained that she had inherited a substantial sum of money from her mother, as well as part ownership of her mother's house. Her siblings agreed to permit her to live in the house, rent free, while she finished college and earned a teaching license. Teresa explained that her mother's death not only produced closer contact with her siblings, but also renewed the importance of this contact.
In addition, Teresa explained that she had exhausted her career opportunities as a secretary in Las Vegas. She stated that teaching offers her a career, rather than a "job," and because her hours would mirror Colin's school schedule, he would no longer need outside day care.
James opposed her motion, arguing that a move to West Virginia offers no actual advantage to Teresa or Colin and that the move would disturb the current, functioning joint custody arrangement. The district court held an evidentiary hearing to address the divorce, a permanent custody arrangement, and Teresa's motion to relocate. During the hearing, the district court heard extensive testimony of Teresa and James regarding their parenting strengths, weaknesses, abilities, and patterns. Their testimony indicated that both Teresa and James were caring, responsible parents, each with only minor complaints about the parenting style of the other. The hearing also revealed that the temporary joint custody arrangement, in place since February 19, 1997, was operating without significant problems.
On June 24, 1997, the district court issued findings of fact and conclusions of law and granted a decree of divorce. The district court found that although Teresa filed her request to relocate in good faith, an award of joint legal and physical custody better served Colin's best interests. The district court held that Teresa's motion must be denied because a joint physical custody arrangement would be impossible if Teresa were permitted to relocate to West Virginia. Further, the district court ordered that if Teresa chose to relocate, James would be granted sole physical custody of Colin. Teresa filed this timely appeal from the custody orders.
The district court made the following factual finding regarding its determination of custody:
Teresa and James are like most couples with young children. Both love Cohn very much. Most of the daily responsibility for the care of Colin was managed by Teresa. James did participate however, and appears to have spent most of his time playing with Colin. Either parent in the absence of the other, could adequately provide for the child. If the Court were required to determine a primary custodian, Teresa would have a slight edge due *1076 to the fact that she performed more of the child care responsibilities. James' role with the child was more playful. Since the institution of the joint physical arrangement there have been no difficulties, and both appear capable of caring for Colin.
The district court entered the following conclusions of law regarding the custody award:
4. The recent Supreme Court decision of Mosley v. Figliuzzi, 113 Nev.Adv.Op. 8 [113 Nev. 51, 930 P.2d 1110] (Jan 3, 1997) notes a preference for joint physical custody.
5. The Mosley decision requires a greater commitment by this Court to joint physical custody.
6. The fundamental proposition that both parents ought to be allowed to maintain significant and substantial involvement in the child's life cannot be disputed. This involvement ought to be nearly equal as required by the Nevada Supreme Court. NRS 125.480(1) states that:
In determining custody of a minor child in an action brought under this chapter, the sole consideration of the court is the best interest of the child. If it appears to the court that joint custody would be in the best interest of the child, the court may grant custody to the parties jointly.
Despite the language of the statute, the best interest of the child can never be determined in a vacuum without considering the other members of the family. The circumstances and well-being of the parents are inextricably entwined with the best interest of the child. If the circumstances and needs of the divorcing parents_were given no consideration, in a significant number of cases, the court would be required to deny the divorce, or at least to require the parents to continue to live with one another, as that would be in the best interest of the child. But, that is neither the law nor public policy.
The district court entered the following findings of fact with respect to Teresa's motion to relocate:
6. Teresa's request to relocate is made in good faith.
7. With the exception of whether the move, if allowed, would allow a realistic opportunity for the noncustodial parent to maintain a visitation schedule that would preserve the parental relationship, there is no finding which would impede the move.
8. If the move were allowed, however, the true joint custody arrangement between Colin and his father would be impaired and a joint custodial relationship virtually impossible to maintain.
9. James is not the "noncustodial" parent specified in Nevada Supreme Court relocation decisions.
10. It is not in Colin's best interest to allow the relocation. In the State of Nevada, the child can maintain a relationship with both parents.
11. There is nothing in Teresa's request to relocate which creates a compelling reason to move. While her request is made in good faith, it is not compelling such that the true joint physical custody arrangement should be destroyed.
The district court entered the following conclusions of law with respect to Teresa's motion to relocate:
7. The Court disagrees with Teresa's assertion that the request to relocate should be granted since she has met the required showing under. NRS 125A.350. See, e.g., Gandee v. Gandee, 111 Nev. 754, 895 P.2d 1285 (1995).
8. In relocation cases reviewed by the Court in which the Schwartz v. Schwartz analysis was successfully applied, the trial court had previously determined the applicant was the primary physical custodian. No case was found where a joint physical custodian was required to relocate simply upon demonstrating a parent's good faith motive for the move.
9. The appropriate analysis in this case is whether relocation is in the best interest of the child.
10. It is inconsistent that both parties are capable of sharing joint physical custody and that one party should be able to defeat the Order by requesting to move under NRS 125A.350.
*1077 The district court's conclusions of law suggest that the Schwartz factors need not be considered when a motion to relocate is made before permanent custody is granted.
NRS 125A.350, states:
If custody has been established and the custodial parent or a parent having joint custody intends to move his residence to a place outside of this state and to take the child with him, he must, as soon as possible and before the planned move, attempt to obtain the written consent of the other parent to move the child from the state. If the noncustodial parent or other parent having joint custody refuses to give that consent, the parent planning the move shall, before he leaves the state with the child, petition the court for permission to move the child. ...
(Emphasis added.) Clearly, NRS 125A.350 applies to a parent who shares joint custody and seeks to move to a state other than Nevada. Further, we hold that NRS 125A.350 also applies to situations in which temporary custody has been established.
Several cases interpret NRS 125A.350 and should guide the district courts in such determination of whether to grant Teresa's motion to relocate pursuant to NRS 125A.350. See, e.g., Gandee v. Gandee, 111 Nev. 754, 895 P.2d 1285 (1995); Trent v. Trent, 111 Nev. 309, 890 P.2d 1309 (1995); Jones v. Jones, 110 Nev. 1253, 885 P.2d 563 (1994); Schwartz v. Schwartz, 107 Nev. 378, 812 P.2d 1268 (1991). Although the underlying facts in these cases concern a custodial parent seeking to leave Nevada, these cases do not explicitly or impliedly limit their applicability to parents with primary physical custody. These cases apply to all motions to relocate filed pursuant to NRS 125A.350 and should guide district courts in such determination.
Thus, Teresa's desire to relocate should have been considered in the initial permanent custody determination, just as it would be if the motion to relocate were made after the divorce decree in which permanent custody is determined. The district court should have considered the factors outlined in Schwartz, 107 Nev. at 383, 812 P.2d at 1271, in determining the appropriate custody arrangements.[1]
In addition, the district court appears to misunderstand the holding of Schwartz and the subsequent cases applying the Schwartz factors. Good faith is not the only requirement for granting relocation. It is also not true, as Teresa apparently contends, that simply alleging the same factors that appear in one case in which relocation is granted automatically requires that relocation be granted in a case with similar factors. Each case must be decided on the basis of its own facts by applying the applicable principles of law.
The district court's conclusions of law suggest that this court's opinion in Mosley v. Figliuzzi, 113 Nev. 51, 930 P.2d 1110 (1997), virtually mandates that the joint physical custody arrangement which the McGuinesses have enjoyed must be maintained. There is no dispute that Nevada's public policy favors "frequent associations and a continuing relationship with both parents" after divorce. NRS 125.460(1). There is also no question that if one parent moves away, the opportunities for daily or weekly physical contact are lessened. However, even though there may be a preference for joint physical custody in our law, other factors must also be considered. Physical separation does not preclude each parent from maintaining significant and substantial involvement in a child's life, which *1078 is clearly desirable. There are alternate methods of maintaining a meaningful relationship, including telephone calls, e-mail messages, letters, and frequent visitation. Also, the well-being of a parent, which could be heightened by relocation, may have a substantial effect on the best interest of the child.
In Schwartz, this court first articulated the standard for evaluating motions to relocate pursuant to NRS 125A.350. "[I]n determining the issue of removal, the court must first find whether the custodial parent has demonstrated that an actual advantage will be realized by both the children and the custodial parent in moving to a location so far removed from the current residence that weekly visitation by the noncustodial parent is virtually precluded." Schwartz, 107 Nev. at 382, 812 P.2d at 1271. According to Schwartz, if the moving parent satisfies this threshold requirement, the court must weigh a series of factors, including their impact on the family and "the extent to which the compelling interests of each member of the family are accommodated." Id. at 383, 812 P.2d at 1271. In weighing and balancing the factors, this court set forth a nonexhaustive list of sub-factors that "may assist the court in reaching an appropriate decision."[2]Id.
In Jones, this court refined the "actual advantage" standard enunciated in Schwartz and directed district courts to focus on the availability of reasonable alternative visitation. Jones, 110 Nev. at 1266, 885 P.2d at 572. This court stated:
[A] custodial parent seeking removal does not need to show a significant economic or other tangible benefit to meet the threshold "actual advantage" showing. If the custodial parent shows a sensible, good faith reason for the move, the district court should evaluate the other factors enumerated in Schwartz, focusing on whether reasonable, alternative visitation is possible.
If reasonable, alternative visitation is possible, the burden shifts to the noncustodial parent to show that the move is not in the best interests of the children. Such a showing must consist of concrete, material reasons why the move is inimical to the children's best interests.
Id. "Reasonable, alternative visitation is visitation that `will provide an adequate basis for preserving and fostering a child's relationship with the noncustodial parent if the removal is allowed.'" Id. at 1263, 885 P.2d at 570 (quoting Schwartz, 107 Nev. at 385 n. 5, 812 P.2d at 1272 n. 5). In citing opinions from other jurisdictions, this court emphasized that the district court may not deny a motion to relocate solely to maintain the existing visitation pattern, even if relocation entails a shift away from consistent day-to-day contact. Jones, 110 Nev. at 1266, 885 P.2d at 570.
In denying Teresa's motion, the district court failed to seriously consider the possibility of reasonable, alternative visitation and focused on the fact that a move would render the current joint custody arrangement impossible. In so doing, the district court disregarded Schwartz and its progeny, which hold that the district court may not deny a parent's motion to relocate simply because the proposed move will disturb the existing custody or visitation arrangement. This court has explicitly cautioned district courts against placing improper emphasis on the fact that a move might prevent weekly visitation for one parent, labeling such practice "problematic." Gandee, 111 Nev. at 762, 895 P.2d at 1291. Moreover, in Trent we stated:
We find it disturbing that despite our decision in Schwartz, many district courts are using NRS 125A.350 as a means to chain custodial parents, most often women, to the state of Nevada. NRS 125A.350 is primarily a notice statute intended to prevent *1079 one parent from in effect "stealing" the children away from the other parent by moving them away to another state and attempting to sever contact. Given the legislative purpose behind NRS 125A.350, it should not be used to prevent the custodial parent from freely pursuing a life outside of Nevada when reasonable alternative visitation is possible.
Id. at 315, 890 P.2d at 1313 (footnote omitted).
The district court below, and numerous other judicial officers in this state have taken an approach to relocation motions brought under NRS 125A.350 that ignores the needs of the parents, even though these needs are vital to, and an integral part of, the considerations in determining the best interest of the children. If the parents' needs are not considered, motions to relocate would almost never be granted, because close physical proximity to good parents is almost always in the child's best interest. When one parent seeks to relocate, it is inevitable that one of the parents, as well as the child, will be deprived to a degree, especially if there has been joint physical custody. The premise of the interpretations in Schwartz and its progeny is that, unless the parents' interests are considered as part of the calculus of these decisions, a parent properly seeking a motion to move would be irrevocably chained to this state by our child custody laws. If that premise is not considered by the district courts, NRS 125A.350 is rendered meaningless.
The California Supreme Court stated the relevant public policy in In Re Marriage of Burgess, 13 Cal.4th 25, 51 Cal.Rptr.2d 444, 913 P.2d 473, 480-81 (Cal.1996):
As this case demonstrates, ours is an increasingly mobile society. Amici curiae point out that approximately one American in five changes residences each year. Economic necessity and remarriage account for the bulk of relocations. Because of the ordinary needs for both parents after a marital dissolution to secure or retain employment, pursue educational or career opportunities, or reside in the same location as a new spouse or other family or friends, it is unrealistic to assume that divorced parents will permanently remain in the same location after dissolution or to exert pressure on them to do so. It would also undermine the interest in minimizing costly litigation over custody and require the trial courts to "micromanage" family decisionmaking by second-guessing reasons for everyday decisions about career and family.

The footnote to this statement reads:
In this matter, the parties continue to dispute whether the mother's change of employment was merely a "lateral" move or was "career enhancing." The point is immaterial. Once the trial court determined that the mother did not relocate in order to frustrate the father's contact with the minor children, but did so for sound "good faith" reasons, it was not required to inquire further into the wisdom of her inherently subjective decisionmaking.
Id. 51 Cal.Rptr.2d 444, 913 P.2d at 481 n. 5.
Accordingly, we reverse the custody order of the district court and remand this matter to the district court for re-evaluation of the custody decision and the motion to relocate by the standards expressed in this opinion.
ROSE, YOUNG, and MAUPIN, JJ., concur.
SPRINGER, C.J., dissenting:
This is a divorce case in which the mother and father are engaging in a custody battle over the custody of their only child, Colin. Each parent sought primary custody in a contested custody proceeding. After considering the best interest of the child and the expressed desire of the mother to take the child with her to West Virginia, the district court awarded joint legal and physical custody to the parents. This court now reverses the judgment of the district court and remands "for re-evaluation of the custody decision and the motion to relocate." The stated ground for reversal is that the mother's "desire to [re]locate should have been considered in the initial permanent custody determination," but was not. I dissent because the district court did consider the mother's desire to relocate and did not abuse its discretion in awarding joint custody, based on *1080 the best interest of the child. As the majority points out, the "district court held an evidentiary hearing to address the divorce, a permanent custody arrangement and Teresa's motion to relocate." I see no reason why the district court should be required to reconsider these matters.
As stated in the majority opinion, both parents were seeking primary custody. Based on a February 1997 hearing, the district court denied the primary custody and awarded temporary joint and equal custody to the two parents. In the following month, March 1997, the mother moved for an order that would permit her to take the child away with her to West Virginia. Asking the court if she could take the child to West Virginia is, of course, the same as asking the court, again, to award her full custody.
As mentioned, at the divorce trial, the district court addressed the issues of "permanent custody arrangement" and the mother's "motion to relocate." I do not see how this court can fail to see that the mother's motion to take the child to Virginia is the same as her previously denied plea for primary custody. The district court saw it. The district court observed that "[i]f the move' were allowed," the "joint custodial arrangement" that had been previously adjudicated and which was ultimately decided upon by the district court would be "virtually impossible." Another way of putting the district judge's approach to the custody and relocation decisions before the court is this: "I decided some months ago to award joint custody. The arrangement is working out well. On the basis of NRS 125.480, which requires that the `sole consideration' of the court he the best interest of the child, I am going to award permanent joint custody. The mother's motion to relocate is the same as a motion for primary custody; therefore, I must deny her motion." Once, after having conducted two custody hearings, the district court made its final joint custody decision, it was correct in ruling that it would be "inconsistent" with the joint custody award to permit one joint custodian "to defeat the [joint custody] order by requesting to move under NRS 125A.850." That is exactly the point: When one joint custodian makes a distant move away from the home of the other joint custodian, this necessarily defeats the joint custody. This being the case, a move of this kind triggers a custody decision under the best interest test rather than a permission to relocate test under NRS 125A.350.[1]
I am concerned about the effect of the majority opinion on NRS 125.480, which requires that the best interest of the child be the sole consideration in child custody disputes. The majority opinion declares that "[d]espite the language of the statute," the best interest of the child "can never be determined in a vacuum without considering the other members of the family." I am not sure what this means. It might mean that from now on district courts must consider, in addition to the best interest of the child, the best interest of "other family members." If the language is intended to mean that, "despite" the statute, the court need not use the child's interest as the "sole" consideration, then the *1081 majority opinion is in direct conflict with the stated, statutory intention of the legislature. It is not clear to me how the district court will go about applying the best interest of the family standard. In any event, as I maintain in this dissenting opinion, a distant move by a joint custodian is such a change of circumstances that the issue of custody and the child's best interest must prevail.
The child's interest must prevail in custody determinations; and it certainly would have been within the scope of the district court's discretion to have concluded that it was in the best interest of this child to grant the motion for relocation and thus change custody from joint custody to primary custody in the mother. The court might also have decided to grant primary custody to the father. What the court did do is to decide that continued joint custody was in the best interest of the child and that the mother could either remain at home or become, effectively, a visiting parent living in West Virginia. It is not necessary or proper to interfere with the district court's custody decree. Of course, if the mother does move away, the district court might, in the future, decide to re-examine the custody arrangement based on change of circumstances. For the present, however, I believe that the custody issue and the relocation issue were correctly decided by the district court.
This is the first time that we have considered a relocation motion by a joint custodian. In cases of joint custody (and in cases in which the noncustodial parent is sharing a large part of the residential responsibility for raising the children), there is inherent in any substantial relocation by one of the joint custodians a radical change in circumstances that not only warrants, but requires, a reexamination of the entire custodial situation. Under such circumstances, the district court cannot naively decide the custody controversy simply as a relocation case, but must, of necessity, first reconsider the entire case purely as a custody matter, decided on the basis of what is found to be in the best interest of the child. Under Murphy v. Murphy, 84 Nev. 710, 711, 447 P.2d 664, 665 (1968), where "the circumstances of the parents have been materially altered," custody may be changed, but only when "the child's welfare would be substantially enhanced by the change." It appears to be rather clear, at this juncture, that the child's welfare would not in any way be enhanced by a dissolution of the joint custody and the virtual removal of one of this child's parents from his life.
The district court was able to see the point: When a joint custodian tells the court that he wants to go to Katmandu and take the children with him, that is the same as saying that he wants a change in custody. The district court properly saw this as a custody case and not merely a case involving one of the parent's desire to move away. The district court correctly surveyed the entire custodial landscape with reference to the best interest of the child. After doing this, the court decided that the best interest of the child would be served by maintaining the parents' joint custody of the child. In a case like this one, where the child is spending substantially equal time with each parent, the question is not whether one parent is entitled to move from the state, the question is what is the optimal custody arrangement, that is to say, the custody that is in the best interest of the child. There is no dearth of authority for the proposition that a joint custodian's making a distant move from the joint custody jurisdiction is, of itself, a change of circumstances, a change that mandates consideration of the entire custody arrangement, to be decided on the basis of the best interest of the child. The easy-to-satisfy Schwartz factors (Schwartz v. Schwartz, 107 Nev. 378, 812 P.2d 1268 (1991)) cannot be blindly and exclusively applied in cases in which an ongoing joint custody relationship is subject to being "defeated" by a proposed relocation. The district court must (as was done in the present case) reevaluate all custodial factors in these kinds of cases and cannot proceed blithely to dispose of what is essentially a custody matter merely by telling one parent that it is all right to move and take the children away with him and away from the other parent.
I cannot, of course, disagree with the majority's assertion that the relocation statute, NRS 125A.350, applies, by its terms, to joint *1082 custody cases. I must note, however, that by including joint custody in the relocation statute, the legislature could not have intended that in the type of joint custody cases in which a substantial relocation disrupts and alters the basic custodial arrangement, the court should be enabled to terminate effectively a pre-existing joint custody, merely by permitting one parent to remove the child from the custody of the other joint custodian. I am sure that the legislature did not intend that the district court should be blind to the best interest standard or that it need not make basic custodial decisions on these kinds of cases before it gets to the relocation considerations dictated by Schwartz. The district court acted reasonably and properly in this case when it decided that continued joint custody was in the best interest of this child and then, based on this ruling, necessarily ruled that the mother could not disrupt the joint custody arrangement by taking the child away from his father and becoming the primary custodian.
In the Schwartz line of cases, we dealt with requests to relocate by parents with primary, not joint, physical custody of the children. Except for two cases in which a parent had obtained primary physical custody by agreement (Cook v. Cook, 111 Nev. 822, 898 P.2d 702 (1995); Trent v. Trent, 111 Nev. 309, 890 P.2d 1309 (1995)), it appeared that the parents in Schwartz-like cases had been awarded primary physical custody of their children by the district court. See Gandee v. Gandee, 111 Nev. 754, 895 P.2d 1285 (1995); Jones v. Jones, 110 Nev. 1253, 885 P.2d 563 (1994); Schwartz v. Schwartz, 107 Nev. 378, 812 P.2d 1268 (1991). Implicit in these custody awards was a finding by the district court that awarding these parents primary physical custody was in the best interest of the children. See NRS 125.480(1) ("In determining custody of a minor child ... the sole consideration of the court is the best interest of the child."). We must, then, begin our analysis of the Schwartz line of cases with the premise that it was adjudged to be in the best interest of the child to remain with the parent seeking relocation. See Schwartz, 107 Nev. at 382, 812 P.2d at 1271 ("In removing a child from the jurisdiction where the child currently lives, the best interests of the child should ... be the paramount judicial concern."). Only after giving "paramount judicial concern" to the best interest of the child can we properly proceed to consider the other factors articulated in the Schwartz line of cases in order to balance "`the custodial parent's interest in freedom of movement as qualified by his or her custodial obligation, the State's interest in protecting the best interests of the child, and the competing interests of the noncustodial parent.'" "Id. at 382, 812 P.2d at 1270 (quoting Holder v. Polanski, 111 N.J. 344, 544 A.2d 852, 855 (N.J.1988)). In the case at bar, the district court determined, twice, that it was in the best interest of the child to remain in a joint physical custody arrangement. Once that determination was made, it, of course, follows that any other custody arrangement would not be in the child's best interest. Once the district court came to the conclusion that the best interest of the child was served by the continuation of joint custody, it was no longer necessary or appropriate to consider the Schwartz factors because relocation would require a change detrimental to the best interest of the child, i.e., a modification of the joint custody arrangement. This mother's moving to West Virginia may be in her best interest, but it did not appear to the district court that it was in the best interest of the child; and the district court so adjudged.
The Schwartz line of cases is not controlling in the present case for another reason. Although on its face NRS 125A.350 addresses joint physical custody arrangements, our treatment of the statute and our analysis in the Schwartz line of cases do not say or imply that a motion to relocate may be granted in joint custody cases without revisiting the whole custody arrangement. See Schwartz, 107 Nev. at 381-82, 812 P.2d at 1270 (The overall purpose of the statute is "to preserve the rights and familial relationship of the noncustodial parent with respect to his or her child."). There is no "noncustodial parent" here.
Our analysis in the relocation cases has thus far been predicated on the relocating parent already having primary physical custody. For this reason, the Schwartz line of *1083 cases requires us to consider, for example, "whether the custodial parent's motives are... not designed to frustrate or defeat visitation rights accorded to the noncustodial parent" and "whether ... there will be a realistic opportunity for the noncustodial parent to maintain a visitation schedule that will adequately foster and preserve the parental relationship with the noncustodial parent." Schwartz, 107 Nev. at 383, 812 P.2d at 1271. Such an analysis is appropriate only in cases in which a court is endeavoring to insure that the parent remaining in Nevada is not deprived of what he or she had before, namely, visitation rights. Neither parent, in the case before us, had visitation rights. Each parent had full and equal custodial rights; so it is idle to speak of either parent's suffering in the quality and quantity of such visitation. By effectively modifying the joint custody arrangement by permitting the mother to relocate and take the child away with her, the father is being deprived of his right of custody. The Schwartz line of cases cannot be relied upon, and was not relied upon by the district court, in deciding this matter.[2]
As in Mosley v. Figliuzzi, 113 Nev. 51, 930 P.2d 1110 (1997), the McGuinnesses were sharing physical custody of the child equally under a joint legal and physical custody decree. The district court quite correctly concluded that the father was not a "`noncustodial' parent." The father was not (as in the Schwartz-like cases) a secondary custodian or "visiting" parent trying to protect his visitation rights by resisting a primary custodian's request to move from the jurisdiction and take the child away. The father here is the custodian, the primary custodian (or should I say the "co-primary custodian"?). Once the father's joint custody status was reaffirmed and readjudicated, removal proceedings, for the time, anyway, became moot.
Although NRS 125A.350 requires that "a parent having joint custody" must, like a primary custodian, petition for permission to leave the state with the child, where a district court reexamines the whole issue of custody and decides that joint custody still is in the best interest of the child, such a custody decree should be sustained. See Primm v. Lopes, 109 Nev. 502, 504, 853 P.2d 103, 104 (1993) (holding that in a custody matter, a trial court is presumed to have properly exercised its discretion in deciding what constitutes a child's best interest). It would not make any sense for the court, after making the best interest, joint custody judgment, to consider whether the child should then be removed from the state and so demolish the joint custody status just decided to have been in the child's best interest.
I note that in this case the district court held that as to the original "institution of the joint physical arrangement[,] there have been no difficulties," that the "custody arrangement between. Colin and his father would be impaired" by the prospective move, and, most importantly, that "[I]t is not in Colin's best interest to allow" the mother to take the child away in a way that would "defeat" the joint custody arrangement.
In concluding, I would note that in addition to finding, twice, that maintaining the joint custody arrangement was in the child's best interest, the district court also found that there was nothing in the mother's "request to relocate which creates a compelling reason to move," and that, although her request to relocate may have been made "in good faith," her request was not so "compelling" that a "true joint physical custody arrangement should be destroyed." We should pay attention to these findings.[3] We should leave the *1084 district court's decision alone and, whenever feasible, permit the child to grow up with two parents instead of one. I would affirm the district court's orders.[4]
NOTES
[1] These factors are:

(1) the extent to which the move is likely to improve the quality of life for both the children and the custodial parent; (2) whether the custodial parent's motives are honorable, and not designed to frustrate or defeat visitation rights accorded to the noncustodial parent; (3) whether, if permission to remove is granted, the custodial parent will comply with any substitute visitation orders issued by the court; (4) whether the noncustodian's motives are honorable in resisting the motion for permission to remove, or to what extent, if any, the opposition is intended to secure a financial advantage in the form of ongoing support obligations or otherwise; (5) whether, if removal is allowed, there will he a realistic opportunity for the noncustodial parent to maintain a visitation schedule that will adequately foster and preserve the parental relationship with the noncustodial parent.
Schwartz v. Schwartz, 107 Nev. 378, 383, 812 P.2d 1268, 1271 (1991).
[2] "For example, in determining whether, and the extent to which the move will likely improve the quality of life for the children and the custodial parent, the court may require evidence concerning such matters as: (I) whether positive family care and support, including that of the extended family, will be enhanced; (2) whether housing and environmental living conditions will be improved; (3) whether educational advantages for the children will result; (4) whether the custodial parent's employment and income will improve; (5) whether special needs of a child, medical or otherwise, will be better served; and (6) whether, in the child's opinion, circumstances and relationships will be improved." Schwartz, 107 Nev. at 383, 812 P.2d at 1271.
[1] See, e.g., In re Marriage of Burgess, 13 Cal.4th 25, 51 Cal.Rptr.2d 444, 913 P.2d 473, 483 n. 12 (Cal.1996) (when parents have shared joint physical custody, relocation of one of them justifies modification of custody under a best interests test); Ayers v. Ayers, 508 N.W.2d 515, 519 (Minn. 1993) (in shared custody cases, relocation amounts to a modification of the custody award, and, thus, must be justified by the relocating parent); Jaramillo v. Jaramillo, 113 N.M. 57, 823 P.2d 299, 309 (N.M.1991) (where parties share custody equally, neither has the burden of proof in removal matter). Thus, when a parent who shares equal physical custody with the other parent decides to move, it is no longer a question of "permission to move"; the question becomes the greater question of who should, under the circumstances, receive primary custody of the child. "[I]f neither parent has been exercising a significant majority of custodial responsibility for the child, the court should reallocate custodial responsibility based on the best interests of the child, taking into account all relevant factors including the effects of the relocation on the child." The American Law Institute, Principles of the Law of Family Dissolution: Analysis and Recommendations, Part I § 2.20(4)(b) (Tentative Draft No. 3, 1998) (hereinafter "ALI Draft") "When relocation in such cases makes it necessary to choose one parent to be the primary custodial parent, there is little choice but to reassess the custodial arrangements under the best-interest-of-the-child test. In applying this test, the court should consider all relevant factors, including the potential disruptive effects of the relocation itself and its potential benefits." ALI Draft, Part I § 2.20 cmt. e.
[2] In the Schwartz line of cases, we were able to decide the issue of relocation without disturbing the existing custody arrangement. In the case at bar, granting the mother's request to relocate requires modifying the custody arrangement, even though the district court found the joint custody arrangement to be in the child's best interest. Thus, by requesting to relocate, the mother has managed to obtain a change of custody by doing an end run around our rule that "[W]here custody is shared, the best interest of the child is the single dispositive factor governing modification." Hopper v. Hopper, 113 Nev. 1138, 1142 n. 2, 946 P.2d 171, 174 n. 2 (1997), This opens up NRS 125A.330 to abuse, and I can see the majority's result discouraging joint custody arrangements in the future because parents with no plans to leave Nevada will fear the same fate befalling them as has befallen the hapless father here,
[3] We have previously noted our concern that NRS 125A.350 was being used "as a means to chain custodial parents, most often women, to the state of Nevada." Trent, 111 Nev. at 315, 890 P.2d at 1313. By preserving the joint custody arrangement in the case at bar, we will not be attempting to chain the mother to this state. Rather we will be acknowledging that the child's best interest comes first and that the calculus of relocation cases obliges us to consider the mother's "`interest in freedom of movement as qualified by ... her custodial obligation.'" Schwartz, 107 Nev. at 382, 812 P.2d at 1270 (quoting Holder, 544 A.2d at 855).
[4] I wish to include in the margin some comments on the majority's treatment of Mosley. The majority believes that the district court "overstated the significance" of Mosley. I do not see how. There is nothing in the record that suggests to me that the district court incorrectly saw Mosley as standing "for the proposition that this court always prefers equal split, joint custody arrangements." The district court cited Mosley largely because Mosley, like this case, was a joint physical custody case and the question was whether a joint physical custody decree should stand or fall, based upon the best interest of the child. Mosley does not hold that the court always prefers "equal split," nor did the district court cite it for such a holding.