**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0917-18T1

ALEJANDRO MENDOZA,

    Plaintiff-Respondent,

v.

SI-NAE SHIM,

    Defendant-Appellant.

_____

> Argued October 3, 2019 – Decided October 23, 2019
>
> Before Judges Koblitz, Whipple, and Mawla.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2351-09.
>
> Robert W. Avery argued the cause for appellant (Avery & Avery, attorneys; Bonnie C. Frost and Matheu D. Nunn, on the briefs).
>
> Alejandro Mendoza, respondent, argued the cause pro se.

PER CURIAM

Defendant Si-Nae Shim appeals from an August 1, 2018 order granting plaintiff Alejandro Mendoza the ability to remove the parties' children to Florida, and a September 14, 2018 order, denying reconsideration. We affirm.

This matter has a lengthy history occasioned by defendant's refusal to return the children from South Korea, where the family had a short-lived residence due to the parties' work obligations as music instructors. We need not explain the details surrounding defendant's actions, except to note the ordeal concluded when defendant was arrested in Guam, extradited to New Jersey, and the Bergen County Prosecutor's Office required defendant to return the children to the United States as a condition of the dismissal of the criminal charges against her.

Following the children's return, a sixteen-day divorce trial occurred and the court entered a judgment of divorce on June 28, 2013. The trial judge concluded plaintiff testified credibly and defendant did not. The judge granted plaintiff sole legal custody of the children and defendant supervised parenting time because he concluded she posed "a substantial flight risk."

In June 2018, plaintiff filed a motion to remove the children to Florida. He certified he received an employment offer in Naples, where he would be earning approximately double his current income. He also certified he had two

2

sisters and a niece in Florida, with whom the children were very close. Plaintiff also requested the court terminate defendant's supervised visitations with the children, which were one hour per week.

Defendant filed a cross-motion opposing the removal and sought unsupervised visitation. Her certification questioned the good faith reasons for the removal. She claimed plaintiff could earn more income in his current position in New York and operated without debt, due to a bankruptcy action a few years earlier. Defendant also cited several written summaries of the supervised visitation sessions and a letter from a former visitation supervisor, touting the success of visitation.

At oral argument of the motions, the judge issued a tentative decision summarizing the reasons plaintiff articulated for the removal. The judge added the following:

> [Plaintiff's] position is rather straight forward. He correctly states that he has sole legal custody over the children and believes that it is his prerogative to make decisions for the children, based on what he believes is in their best interest.
>
> . . . .
>
> He notes that the children are doing exceptionally well in his care. Particularly musically and academically he acknowledges that moving to Florida would effectively terminate [defendant's] weekly in[-]

person supervised visitation with the children. But he argues that he is willing to work with [defendant] to make visitations happen in Florida.

He's also willing to expand the electronic communications so that [defendant] can communicate with the children regardless of where they are located.

[Defendant] strongly opposed [plaintiff's] request for relocation. She argues that [plaintiff] is effectively trying to terminate her in[-]person parenting time. In fairness, this is a practical implication of [plaintiff's] moving to Florida. [Defendant] attaches notes . . . of her supervised visitations with the children[.] . . .

Those notes span from 2014 through 2016. There is no dispute in any of those papers that [defendant] exercises her supervised parenting time with the children on a regular basis and that the time is enjoyed by all parties.

Those documents make it appear that the children love their mother and their mother loves the children.

. . . .

The allegations of [defendant] are also given reinforcement from . . . previous Bergen Family Center supervisors. . . . Both supervisors note that [defendant] and the children have a loving relationship. [One supervisor] goes so far as recommending that [defendant] should be permitted an opportunity to exercise unsupervised parenting time. That of course would not be permitted absent a battery of psychological examinations and[/]or other professional examinations and professional opinions, to determine whether or not there is a risk to the children in

4

remaining in the presence of [defendant] in an unsupervised capacity.

Because of that, I do intend to sign an order granting [plaintiff] the right to relocate to the state of Florida. There has been no showing made by [defendant] that there's a change of circumstances . . . to readdress the custody aspect of this case.

Custody after trial has been vested in [plaintiff]. He has sole legal custody of the children. He has sole decision making for the children. He has sole residential custody of the children and . . . there is no need to have a plenary hearing because there's nothing to decide.

It is not a question of custody. As that has not been raised. . . . [T]his is not a joint legal custody case. And I don't need to address that.

So I do intend to sign an order permitting dad to relocate with the children to Florida.

The lengthy oral argument that followed failed to convince the judge to change his tentative decision and he entered the August 1, 2018 order granting the removal. The order modified visitation and allowed defendant to travel to Florida once per month to enjoy five hours of supervised visitation. The judge ordered plaintiff to pay for defendant's flights, and defendant was required to pay for her accommodations in Florida and for the cost of the supervisor. Defendant was also entitled to have supervised communication with the children via Skype, Facetime, telephone, or similar platforms, once daily. The judge

5

denied defendant's request for unsupervised parenting time and a custody evaluation.

Defendant filed a motion for reconsideration. She argued the judge misapplied the law, she obtained newly-discovered evidence regarding plaintiff's concealment of information related to his reasons to move to Florida, and she was unable to afford the costs associated with the monthly visits to Florida. On September 14, 2018, the judge denied defendant's motion.

Defendant appealed from the September order and we remanded to the motion judge for the limited purpose of providing defendant an opportunity to present the new information she claimed to possess related to the removal. The motion judge conducted a plenary hearing in July 2019. Defendant testified plaintiff gave false reasons for the move to Florida because he remained employed in New York; defendant observed him at work, was aware he continued to teach six students in New York, and saw his car parked near a Bergen County residence. Defendant also testified plaintiff misrepresented that he was relocating to Naples when he in fact moved to Sarasota. The judge made the following detailed findings:

> The opinion that I had come to was . . . I was permitting [plaintiff] to relocate to Florida. Not a particular location within the State of Florida.

A-0917-18T1

. . . .

. . . I don't know what the fraud is that would be committed. I don't find that there was any intentional act that was uttered or written by him in that regard.

But the bottom line is that [plaintiff] . . . testified that the car that [defendant] speaks of is not his. He owns a minivan in Florida. It's registered in Florida, and he did attach a copy of a document to demonstrate that. . . .

[Plaintiff] says my job is working for a violin shop that has various stores in Florida, and I teach violin to students in the area, and I perform in concerts in Florida, and in other places throughout the world. He is a concert violinist. It takes him all over the country. It takes him to many places outside of the country. But he is employed in Florida. His family is in Florida. They live in Florida. And they have roots in Florida. They have a rental house in Florida.

He testified that the children are attending school in Florida, and submits a document that one of the children . . . gained entry into the junior honor society. He testified that he has a driver's license issued by the State of Florida. . . . He's employed in Florida. He's got the letter to prove that he's employed in Florida. In his [c]ertification he says that everybody, the four — the children and he and his wife have health insurance in Florida. He says, what I did in Dumont, I . . . rented the house. It was not rented out until 2019. On those occasions [when] he was in New Jersey. What's his explanation? That [he] had not moved out of New Jersey, but that he had to get . . . [his possessions] out of the house, because it's a rental property. . . . He testified that the moving company came, and they [came] over the weekends he was here. And during the

7

week there were times when he was boxing the stuff up . . . [n]ot because he was still a resident of New Jersey, but the stuff had to be packed up into a moving van, and he was doing it by himself.

I don't find that to be fraudulent, the fact that he's here in New Jersey. The fact that he's working in New York, did he disclose it? . . . He was still going to be working in New York. But what he said was credible. Yes, I had to give them one semester's notice that I was not going to be continuing at the Manhattan School, but I had these students there that I've had since a very young age. I am their instructor, I want to continue to be their instructor. They're going there with the understanding that I would be their instructor. So what does he do? He comes up here fifteen times in the Fall, and fifteen times in the Spring. He comes up, he flies in on a Friday night, he flies out Sunday. He has students on Saturday, three students from New York, three students from New Jersey. But that does not show an intention that he was not going to relocate from New Jersey. It shows the dedication of . . . a person who is [in] an honorable profession being a teacher. . . .

. . . .

He explains that he was first offered a position with the violin shop in Tampa. The training occurred in Tampa. The intention was that they were going to expand the shops into Naples, but after the move it didn't pan out. . . . Instead he's a general manager and a violin specialist at their established Sarasota location. That's part of life. Business[es] plan to expand, they change their mind, and they don't expand as they had thought, or they make business decisions. But I didn't see anything . . . [that] the results of the [m]otion were to say that he was limited to go to Naples. He was going

8

to Florida with the children. He's got family in both Naples and in Sarasota.

. . . .

With regard to allegations that are made by [defendant] that . . . she doesn't have the funds to visit the children once a month, as I ordered, since I directed that he pay for her flights. . . . I remember I expanded [defendant's] ability to have [a] relationship with the children by giving her more time in Florida, than she was getting in New Jersey because of that.

. . . .

The new information, the new evidence that [defendant] uses, they're real minor details. It would not have affected my decision in allowing him to relocate to Florida. Especially in this day and age when people travel from [s]tate to [s]tate and cross[-]country. It is not unheard of. . . .

He's a domiciliary of Florida. He's amply demonstrated that. He has sole custody of the children. He [h]as demonstrated that this was a move that was justified. I was satisfied granting that move. There is nothing new here that I would consider to change that particular ruling. I do not intend to order that the children be relocated to the State of New Jersey. Their roots are now in Florida. Their family is in Florida. [Defendant] is in New Jersey. [Defendant] is permitted to visit with the children.

I.

An appellate court's scope of review of the Family Part's factfinding function is limited. See N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J.

9

Super. 451, 476 (App. Div. 2012). The Family Part's factual findings "are binding on appeal when supported by adequate, substantial, credible evidence." O'Connor v. O'Connor, 349 N.J. Super. 381, 400-01 (App. Div. 2012) (quoting Cesare v. Cesare, 154 N.J. at 411-12 (1998)). This traditional standard of review is expanded when the court committed an alleged error in evaluating the underlying facts. MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007).

Nevertheless, a reviewing court should accord deference to the Family Part's "findings unless they 'went so wide of the mark that a mistake must have been made.'" Ibid. (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding[,]" and the conclusions that flow logically from those findings of fact. Cesare, 154 N.J. at 413. "Although we defer to the trial court's findings of fact, especially when credibility determinations are involved, we do not defer on questions of law." N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 330 (App. Div. 2011) (citing N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 88-89 (App. Div. 2006)).

On appeal, defendant argues the motion judge misapplied the law when he permitted the removal because he failed to apply the best interests factors.

She argues the judge did not address the proper removal standard for "matters where one parent has sole legal custody and the other parent has weekly parenting time[.]" Defendant contends the judge created a new legal standard for non-custodial parents in removal cases by shifting the burden to the non-custodial parent to demonstrate a change in circumstances to defeat the removal application. She argues the trial court should have held a plenary hearing to determine whether relocation of the children to Florida was in their best interests. Defendant also argues the judge failed to consider the evidence presented at the plenary hearing on her motion for reconsideration, namely, evidence plaintiff was still working in New York and driving a car in the New York/New Jersey area. She also raises objections to the content and format of plaintiff's appellate brief.

We are unpersuaded that the motion judge committed reversible error or misapplied the law. N.J.S.A. 9:2-2 states a parent who seeks to remove a child from the state when the other parent does not consent must demonstrate "cause" for the removal. As we recently stated, "under N.J.S.A. 9:2-2, '"cause" should be determined by a best interests analysis in which the court will consider all relevant factors set forth in N.J.S.A. 9:2-4(c), supplemented by other factors as appropriate.'" Dever v. Howell, 456 N.J. Super. 300, 313 (App. Div. 2018)

(quoting Bisbing v. Bisbing, 230 N.J. 309, 338 (2017)). The statutory best interests factors require the judge adjudicating custody and parenting time disputes to consider the following:

> the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children. A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.
>
> [N.J.S.A. 9:2–4(c).]

A parent possessed with sole legal custody has the sole authority to make the major decisions on behalf of the children. See Pascale v. Pascale, 140 N.J. 583, 596 (1995). To be certain, this does not absolve a sole legal custodian of demonstrating that an out-of-state removal is in the children's best interests, but defendant concedes custody was not an issue here. The only consideration here

12

was the effect of the removal on the children's best interests as related to the frequency and in-person nature of the visitation.

We are satisfied the motion judge addressed whether the removal was in the best interests of the children as it related to defendant's visitation. Indeed, when pressed at oral argument before us to identify what N.J.S.A. 9:2-4 factor was overlooked by the motion judge, defendant could only identify the following factors: "the safety of the child and the safety of either parent from physical abuse by the other parent" and "the quality and continuity of the child's education[.]" There is no evidence plaintiff posed a danger to the children and despite defendant's recent history of positive contacts with the children at visitation, this did not undo the sordid history of her having withheld the children from plaintiff until she was arrested and threatened with a criminal prosecution.

Additionally, the evidence in the record demonstrated the removal did not disrupt the children's educations, and they were thriving in their Florida school. The N.J.S.A. 9:2-4 factors did not preponderate in defendant's favor. We are satisfied the motion judge did not overlook the children's best interests.

Indeed, not only did the judge expand and facilitate defendant's visitation, he took into consideration the fact she would be losing weekly in-person contact

13

by requiring personal contact via online video platforms. <u>See</u> <u>McCoy v. McCoy</u>, 336 N.J. Super. 172, 182 (App. Div. 2001) (concluding a parent's "suggested use of the [i]nternet to enhance visitation was both creative and innovative" and reversing the judge's dismissal of daily internet video contact between the children and the parent remaining in New Jersey).

The judge's decision to permit the removal was supported by the substantial, credible evidence in the record, and was neither an abuse of discretion, nor a misapplication of law. We have not addressed the other arguments raised in defendant's brief because they are without sufficient merit to warrant discussion. <u>Rule</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0917-18T1