**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3786-22

K.R.,[1]

    Plaintiff-Appellant,

v.

J.L.R.,

    Defendant-Respondent.

_____

        Submitted May 6, 2024 – Decided May 13, 2024

        Before Judges Sabatino and Vinci.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-0612-15.

        Wernik & Salvatore, attorneys for appellant (David Salvatore, of counsel and on the brief).

        Senoff & Enis, attorneys for respondent (Michael J. Gunteski, on the brief).

PER CURIAM

---

[1] We use initials to protect the medical privacy and welfare of the parties' minor son who is the subject of this appeal. R. 1:38-3(d).

This is a child relocation and custody case in which we are guided by the "best interests of the child" test adopted by the Supreme Court in <u>Bisbing v. Bisbing</u>, 230 N.J. 309 (2017). After a fact-finding hearing with several witnesses, the Family Part judge denied the mother's opposed application to move the parties' eleven-year-old son with her from New Jersey to Florida. We affirm.

The parties married in 2010, separated in 2014, and divorced in 2015. They have one child together, a son who was born in December 2012. Since the time of the separation, plaintiff K.R., the child's mother, has had primary residential custody of the son. However, the father, defendant J.L.R.,[2] has regularly enjoyed parenting time with the son every other weekend and on vacations, pursuant to the parties' divorce agreement.

The son has lived in New Jersey his entire life. He resides with his mother at her parents' home in New Egypt and attends school there. The father lives in Neptune Township. He has been employed with the same firm as an environmental technician for about fourteen years.

---

[2] All three of the child's initials are identical to those of the father. The child is referred to in the trial court's opinion as "J.R." To avoid confusion, we refer to the child as "the son," rather than by initials.

A-3786-22

Both parties have remarried. The mother's present husband, who she married in 2022, has two children from another relationship. They were ages twelve and six at the time of the trial court's decision. Those children live abroad, but they visit with their father about twice each year.

The father has two children with his second wife, who he has known since 2016. Those children, who were ages five and one-and-half at the time of the trial court's decision, live with the father and the stepmother in Neptune Township. Their home is large enough to accommodate the son and his two half-siblings.

The mother sought to relocate with the son to Florida because her current husband's long-time employer offered him a better paying position in Florida in 2021, with a chance to take over the reins of the company in the future. He accepted the offer, and they bought a house together in Florida. The mother's plan is to move to Florida and find a job herself. Her parents are also planning to move to Florida and be nearby.

The parties agree the son would prefer to remain in New Jersey and live, for the first time, at his father's house. The mother contends the son is becoming receptive to a possible move to Florida. If the son remained in New Jersey and moved in with his father, his stepmother would take the lead in getting him ready

A-3786-22

for school, meals, and so on at the father's house. The father is willing to assume primary residential custody if the mother moves to Florida.

If he remained in New Jersey, the son would have to change school districts to Neptune. He has special needs (dyslexia) and an IEP. The trial judge found it unclear if the Neptune school district would be as effective as the son's present district in providing services. On the other hand, the judge also noted it is unclear if the Florida schools would provide the son with equally effective services, either.

There are cousins in New Jersey on the father's side, with whom the son often spends time. The son has no cousins in Florida. The stepfather's children are there during the summer for a few weeks and on school breaks. The judge found that if the son moved to Florida, his time there would not overlap much with the stepfather's children, because the mother's revised custody plan called for the son go to New Jersey during the summer and on school breaks.

The judge declined in his discretion to interview the son about his preferences. Neither parent wants the son caught in the middle of a conflict.

The parties fortunately have an amicable relationship, and there has been no domestic violence between them. Until the present relocation matter, they have not been litigating disputes with one another in the Family Part.

A-3786-22

After a plenary hearing at which each of the parents testified, as well as the maternal grandmother and the mother's current husband, the Family Part judge found it is the best interests of the son to not relocate. The judge wrote a detailed opinion dated July 11, 2023, applying the Bisbing factors. He recognized that, no matter who prevailed in the case, the parents would be 1,200 miles apart. The opinion reasonably discusses the evidence in a fair manner.

On appeal, the mother argues the judge misapplied the factors. She contends the judge placed too much weight on the son's lifelong residence in New Jersey and his interactions with extended family in New Jersey. She also contends the judge did not give enough consideration to the fact that the father would depend greatly on his present wife to take care of the son's daily needs and the fact that the family unit the son has lived with up until now are all moving to Florida.

N.J.S.A. 9:2-2 requires a parent seeking to relocate a child from New Jersey without the consent of the other parent to demonstrate "cause" for the relocation. The intent of N.J.S.A. 9:2-2 is "to preserve the rights of the noncustodial parent and the child to maintain and develop their familial relationship." Bisbing, 230 N.J. at 323 (quoting Holder v. Polanski, 111 N.J. 344, 350 (1988)). The "Court has observed[] [that] a court making the sensitive

determination of 'cause' must weigh 'the custodial parent's interest in freedom of movement as qualified by his or her custodial obligation, the State's interest in protecting the best interests of the child, and the competing interests of the noncustodial parent.'" Ibid.

In its seminal opinion in Bisbing, the Court interpreted "cause" under N.J.S.A. 9:2-2 as requiring the petitioning parent to satisfy the "the best interests analysis . . . set forth in N.J.S.A. 9:2-4(c), supplemented by other factors as appropriate." 230 N.J. at 338 (citing N.J.S.A. 9:2-4(c)). In adopting the best interest standard, the Bisbing Court specifically overruled the two-part removal test Baures v. Lewis, 167 N.J. 91 (2001). 230 N.J. at 312-23.

N.J.S.A. 9:2-4(c) details the following statutory factors for consideration by trial courts in making custody arrangements:

> [T]he parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the

6

extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

The Bisbing Court noted that "additional factors not set forth in the statute may also be considered in a given case." 230 N.J. at 335 (citing N.J.S.A. 9:2-4). For example, "the parent of primary residence may have important insights about the arrangement that will most effectively serve the child [and] [t]he parent of alternate residence may similarly offer significant information about the child." Ibid. Additionally, "[t]he views of other adults with close relationships with the child may also inform the court's decision." Ibid. (citing Emma v. Evans, 215 N.J. 197, 216-23 (2013)). Trial courts may also consider "documentary evidence, interviews with the children at the court's discretion, and expert testimony." 230 N.J. at 335 (citations omitted).

In reviewing determinations on appeal, we afford considerable deference to the discretion of Family Part judges. The Family Part's findings are binding on appeal, "when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998); see also O'Connor v. O'Connor, 349 N.J. Super. 381 (App. Div. 2012). Such deference is particularly appropriate in cases where, as here, the evidence is largely testimonial in nature and hinges upon a

court's ability to make assessments of credibility and veracity based on its observation of testifying witnesses. Id. at 412.

The trial court's application of the pertinent relocation and custody factors under Bisbing involved the exercise of discretion. "Discretionary determinations, supported by the record, are examined to discern whether an abuse of reasoned discretion has occurred." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (citing Gac v. Gac, 186 N.J. 535, 547 (2006)). An abuse of discretion occurs when a trial court's decision "rested on an impermissible basis, considered irrelevant or inappropriate factors, failed to consider controlling legal principles[,] or made findings inconsistent with or unsupported by competent evidence." Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (internal quotation marks and citations omitted).

This court will not "disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" S.D. v. M.J.R., 415 N.J. Super. 417, 429 (quoting Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc., v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974) (alteration in original))). We review rulings on questions of law, however, de novo. Manalapan Realty, L.P. v. Twp. Comm.

of Manalapan, 140 N.J. 366, 378 (1995).

Applying these review principles to the substance of this appeal, we affirm the trial court's decision substantially for the sound reasons expressed in Judge David M. Fritch's thoughtful written decision. We reject the criticisms levied by the mother as unpersuasive. The judge carefully considered the evidence and applied the correct post-Bisbing legal standards. Although reasonable minds might differ about the outcome of this difficult dispute, it is abundantly clear that the judge acted within the zone of his considerable discretion. We discern no reason to set aside his ruling.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION