**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.   A-2696-23
                A-2714-23

G.M.P.,[1]

      Plaintiff-Appellant,

v.

S.R. and J.L.,

      Defendants-Respondents.

_____

G.M.P.,

      Plaintiff-Respondent,

v.

S.R.

      Defendant-Respondent,

and

J.L.,

---

[1] We use initials and pseudonyms to protect the confidentiality of these proceedings. R. 1:38-3(d)(12) and (13).

Defendant-Appellant.

_____

Argued January 28, 2025 – Decided May 15, 2025

Before Judges Susswein and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FD-04-1234-21.

Theodore J. Baker argued the cause for G.M.P., appellant in A-2696-23 and respondent in A-2714-23 (Weinberg, Kaplan & Smith, PA, attorneys; Theodore J. Baker, on the brief).

Eric R. Foley argued the cause for J.L., appellant in A-2714-23 and respondent in A-2696-23 (Law Office of Louis Guzzo, attorneys; Eric R. Foley, on the brief).

Weinberg, Kaplan & Smith, PA, attorneys for respondent G.M.P. in A-2714-23, join in the brief of appellant J.L.

Law Office of Louis Guzzo, attorneys for respondent J.L. in A-2696-23, join in the brief of appellant G.M.P.

PER CURIAM

In these matters, calendared back-to-back and consolidated for purposes of issuing a single opinion, plaintiffs G.M.P. (Gladys) and S.S. and defendant J.L. (Jake) (collectively appellants) appeal from an April 5, 2024 Family Part order entered after a one-day hearing. Appellants contend the court erred in (1) denying plaintiffs' motion for custody of N.L (Nancy)—the child of Jake and

defendant, S.R. (Shana); (2) vacating plaintiffs' prior order for grandparent visitation of Nancy; (3) denying appellants' request to return Nancy to New Jersey; and (4) denying Jake's request for joint custody of Nancy. After our review of the record and applicable legal principles, we conclude the trial court misapplied its discretion resulting in the denial of due process and a fair hearing to appellants by considering and relying upon evidence and documents from a previous family neglect litigation under Docket No. FN-04-204-20 (FN) which were not part of the hearing record. Therefore, we reverse and remand for a new hearing.

I.

We glean the factual and procedural history from the record below including the testimony and evidence offered at the plenary hearing. Plaintiffs are the paternal grandparents of Nancy, born on March 27, 2019. A plenary hearing was conducted on March 27, 2024 to determine: (1) plaintiffs' complaint for custody of Nancy filed in September 2022; and (2) a motion filed in November 2022 by Jake requesting joint custody of Nancy, modification and enforcement of his parenting time, and compelling Shana to return Nancy to New Jersey after she moved to New York with the child.

We combine the factual and procedural history of the two FD matters which were decided by the trial court under FD-04-1234-21 after the plenary hearing. Following the filing of plaintiffs' and Jake's applications, the court held several pre-trial hearings and conferences over the next year-and-a-half. On December 14, 2022, the court granted interim relief and enforced prior orders for visitation and parenting time to plaintiffs and Jake. In February 2023, at a case management conference, the court enforced plaintiffs' visitation order entered in September 2021 and the parenting time order granted to Jake as part of the FN in July 2021.

While the hearing was pending, on May 4, 2023, Shana filed an order to show cause (OTSC) to bar plaintiffs' and Jake's visitation with Nancy, which was denied without oral argument. A case management conference was held on July 19, 2023, which resulted in the entry of a case management order by consent that permitted the parties thirty days to conduct discovery and to arrange a date for an in-camera review of the Division of Child Protection and Permanency's (Division) records which were part of the prior FN matter. The order also continued pick up and drop off of Nancy at the Trenton train station as previously ordered and set a hearing date for August 28, 2023. The hearing did not occur on that date and an additional case management order was entered on

4

September 1, 2023 permitting the parties to attend mediation and setting a follow up case management conference for September 29, 2023.

The next proceeding was another case management conference held on October 30, 2023, resulting in a case management order stating the "issue of parenting time . . . shall be reserved for mediation" and requiring the parties to report to the court concerning the results of mediation within fourteen days of completion. An almost identical order was entered on December 6, 2023 as the parties had yet to complete mediation. The December order set a hearing date for March 27, 2024. Mediation was unsuccessful and a hearing began and was completed on March 27, 2024.

On April 2, 2024, the court rendered an oral decision partially granting Jake's application for parenting time, denying plaintiffs' application for custody of Nancy and vacating plaintiffs prior order which had granted grandparent visitation. An order memorializing the decision was issued on April 5, 2024.

In its decision, the court found the matter arose from a 2022 OTSC filed by plaintiffs. The OTSC was related to plaintiffs' complaint that Shana had taken Nancy to New York without permission and requested her return. At the outset, the court highlighted the previous litigation under the FN docket. The court's decision referenced that the FN disposition order was entered into

5

evidence by Jake without objection at the hearing. The court highlighted the complaint made by plaintiffs to the Division which was the genesis of the custody and visitation disputes. The court cited from the Division complaint, explaining that plaintiffs alleged to the Division that they found the child dirty and not being properly cared for by Shana. The court found that plaintiffs served as resource parents for twenty months following the filing of the FN complaint. The court noted the Division supported reunification of Nancy with Shana and Jake and assisted them in the return of the child. The court noted that the order closing out the FN litigation granted Shana primary custody of Nancy.

Concerning plaintiffs' application for custody of Nancy, the court determined that it must make an assessment under the factors in N.J.S.A. 9:2-4. The court stated it reviewed the "extensive [Division] records" and the "notes of the FN litigation." The court highlighted the testimony of plaintiffs' custody expert, Dr. Gregory Gambone, Ph.D. during the trial. The court found Dr. Gambone was retained by plaintiffs to perform a bonding evaluation and provide an opinion that they held the status of psychological parents of Nancy based upon the twenty months they were acting as resource parents in the FN matter. The court explained that in limited situations, a person who has taken a significant part in raising a child may be considered a psychological or de facto

A-2696-23

parent of the child. In making this determination, the court highlighted the four prongs required to be proven by clear and convincing evidence for a third-party to be considered a psychological or de facto parent:

> (1) the legal parent consented to and fostered a parent-like relationship between the petitioner and the child; (2) the petitioner lived with the child in the same household; (3) the petitioner assumed the obligations of parenthood by taking significant responsibility for the child's care, education and development; (4) a parent/child bond has been forged between the petitioner and the child.

The court relied on V.C. v. M.J.B., 163 N.J. 200, 223; W.M. v. D.G., 467 N.J. Super. 216, 231 (App. Div. 2021); and K.A.F. v. D.L.M., 437 N.J. Super 123, 133 (App. Div. 2014), in making its determination concerning the legal standard to prove psychological or de facto parenthood. The court also relied upon Rule 5:12-4, applicable to proceedings by the Division.

In evaluating the first factor of the test, the court found that Shana did not consent and did not foster a parent-like relationship between the plaintiffs and the child. The court explained that when Nancy was removed from her parents, both desired her return. The court highlighted the goal of reunification in FN matters, cited portions of the previous Division records and found there was a "lack of cooperation on the part of the father" in that matter. The court summarized the effort by Shana in the FN proceeding, eventually resulting in an

7

order returning Nancy to her care and custody. The court relied upon the opinion

of Dr. Jane Cahill,[2] who performed evaluations on both parents in the prior FN

litigation. The court found:

> Extensive testing done by [the Division] through Dr. Cahill says no, "[t]his evaluation did not find sufficient evidence to support the diagnosis of bipolar disorder or schizophrenia. These diagnos[e]s appear to have occurred when she was about [five years old], based on information from her mother. Based on information available to me, she is not currently demonstrating symptoms consistent with these disorders, even off medications. Therefore, unless [] those symptoms are observed, the diagnosis of bi-polar or schizophrenia should not be carried forward." So, that's sort of definitive determination was made in a, really a definitive proceeding the FN Docket, all of which ultimately returned the custody to the mother. The reports of Dr. Cahill again, support that [] reunification with the mother and she does, that is Dr. Cahill, feels that there are restrictions required for the father for the many reasons that occurred during the hearing and certainly the autistic diagnosis, the concerns of judgment and really safety of the child in the sole care of the father.

The court found that plaintiff failed to prove the first prong of the test in

V.C. and concluded that "the court does not find that there is required to be a

custody determination between the grandparents and the mother."

---

[2] Dr. Cahill's post-nominal letters were not included in the record. We mean no disrespect by our omission.

The court continued:

> Every indication before the [c]ourt is the mother
> completed all of the requests and — and realized all the
> resources offered by [the Division].  She exhibited an
> intense desire to have custody returned to her.  That was
> granted.  Again, we're now back with the grandmother's
> complaint, really ultimately concerning the mother's
> absconding to New York.  The level of intense pressure
> graded by the grandmother in her campaign to seize []
> control and custody of the child from the mother, [] the
> [c]ourt finds [] had to be unbearable for the mother.
> She was really unable to parent.   She was under
> pressure to turn the child over, to sign documents.
> There were documents prepared.  Never once did she
> agree [] to the grandmother having [] voluntarily giving
> up custody of the child.  She always fought for custody
> of the child.  Her move to New York City was one of
> necessity.  She needed to get away from the intense
> pressures of the grandmother particularly, because
> throughout this entire period beginning in 2019, the
> grandmother did nothing [] but attempt to keep the child
> away from the mother and the [Division] records
> evidence correspondence from the mother and you
> know, I'm not saying this is any  in any mean-spirited
> fashion, I'm satisfied that plaintiff grandmother
> believes fully that she would be a better parent.  But
> this is against the grain of everything that's happened
> legally and through our child welfare system.   And
> again, I support as I feel like I must, [] the decisions
> under the FN Docket.  I'm essentially being asked here
> to turn that decision and that process on its ear.  If that
> [c]ourt and that judge wished and the circumstances
> warranted, the mother's parenting rights could have
> been terminated.
>
>          . . . .

9

My goal in this decision is to end this and verify and confirm the FN determination that the child is [] within the custody of the mother and that should continue.

. . . .

The [c]ourt was struck by some references in the [Division] records to concerns that [Division] began to have even about the time [] that the Court returned custody, [] to substantially involve the personnel that [Division] communicated on occasion and there was I guess, a request for an update from one to the other, one [] to healthcare and that reads as follows,

> Hello, I just wanted to update you. Nancy's doctor filled out the daycare form and Nancy will start next week at [Y.A.]'s at Home Daycare. Nancy has a dental appointment next week. Mom is currently working on Medicaid. Also, mom told me that grandmother has hired a lawyer. I'm worried for mom because the grandmother is working against her and not with her. Mom can't even focus all of her attention on Nancy because of the grandmother. Anything we can do?

The reply is,

> Thanks for the update. Unfortunately, there's nothing we can do. Paternal grandmother was trying to cause trouble and make a big deal over small things prior to Nancy returning to mom. She ruined it for herself. Instead of her being a support, she was trying to keep Nancy with her and I honestly would feel the same way as the mom.

10

. . . .

> I certainly don't have any problem with the grandmother or step-grandfather seeing the child. It's just that as any grandparent's rights, they really flow through the children and the problem with every other weekend is I'm not sure how that affects Jake. I imagine and understand [] Jake wants parenting time with the child. He supports the parent's application because of course, that would give the decision making over [] to his mother. But ultimately, I am really going to vacate the September 21, grandparent visitation order to the extent that [], under the law provides [] a right to [] every other weekend [contact with] the grandmother.

As to Jake's application for parenting time with Nancy, the court found there were limitations which were necessary to impose, again citing the psychological evaluation of Dr. Cahill, who opined Jake has "poor judgment." While the court explained that Jake had improved, it also found this improvement was "against the grain of the [c]ourt's concerns that Jake did not really cooperate with the [Division]." The court highlighted its "concern" with Jake's inability to provide his address because of the "negative energy" it would garner for the residents in the building. The court ordered that Jake's parenting time occur at plaintiffs' home, with them serving as supervisors. The court determined it did not have the authority to dictate that plaintiffs serve as supervisors but encouraged them to do so. In coming to this decision, the court

11

noted the requirements and standards concerning "harm avoidance, that it wouldn't create any harm to the child as opposed to a simple best interest."

On appeal, plaintiffs and Jake submitted identical briefs and joint appendices. They contend "the entirety of the [c]ourt's determination should be reversed because the [c]ourt clearly relied on documents that are not part of the trial record, were not identified during trial and whose veracity cannot even be determined." Plaintiffs and Jake also contend the court's misapplication of the prevailing legal standards compounded the lack of a factual basis for the court's determination. Jake further asserts the court's determination must be reversed because the court failed to make any findings regarding his application to return Nancy to New Jersey. Shana is not participating in the appeals.

## II.

Our review of a family court order is limited. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). Generally, the family court's factual findings "are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 412 (citing Rova Farms Resort, Inc. v. Inv's, Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "Discretionary determinations, supported by the record, are examined to discern whether an abuse of reasoned discretion has occurred." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017). An abuse of discretion occurs when

A-2696-23

a trial court's decision "rested on an impermissible basis, considered irrelevant or inappropriate factors, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence." Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (internal quotation marks and citations omitted).

The conclusions of Family Part judges regarding child custody "are entitled to great weight and will not be lightly disturbed on appeal." DeVita v. DeVita, 145 N.J. Super. 120, 123 (App. Div. 1976) (citing Sheehan v. Sheehan, 51 N.J. Super. 276, 295 (App. Div. 1958)). Because this court recognizes "the special expertise of judges hearing matters in the Family Part," Parish v. Parish, 412 N.J. Super. 39, 48 (App. Div. 2010) (citing Cesare, 154 N.J. at 412), we will only disturb the Family Part's factual findings if "they are 'so wholly insupportable as to result in a denial of justice.'" In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (quoting Rova Farms, 65 N.J. at 483-84). The Family Part court's legal conclusions, however, are reviewed de novo. See N.J. Div. of Youth & Fam. Servs. v. I.S., 202 N.J. 145, 183 (2010).

### III.

We initially address appellants' argument that the court abused its discretion and erred by relying on evidence and documents from the FN

litigation which were never admitted into the record nor referenced at the hearing. They argue these errors require reversal. We agree.

In N.J. Div. of Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 264 (App. Div. 2002), we cautioned against proceedings which "include[ ] none of the elements ordinarily deemed indispensable to an adjudicative hearing," such as reviewing and considering documents without identification for the record, which violates basic rules of trial practice. See R. 1:2-3. This inhibits the appellate process by depriving the appellate court of a complete record on appeal. S.R.H. Corp. v. Rogers Trailer Park, Inc., 54 N.J. 12, 18-19 (1969)

Here, as in many custody matters throughout the State, there were two separate proceedings pending simultaneously related to the care and custody of Nancy. The first proceeding was the FN matter which was filed under Title 9. These matters are initiated by the Division concerning possible abuse and neglect of children.

> The main goal of Title 9 is to protect children 'from acts or conditions which threaten their welfare.'" G.S. v. Dep't of Human Servs., 157 N.J. 161, 176 (1999) (quoting State v. Demarest, 252 N.J. Super. 323, 330 (App. Div. 1991)). Title 9 effectively balances a parent's constitutional right "to raise a child and maintain a relationship with that child, without undue interference by the state," against "the State's parens patriae responsibility to protect the welfare of children." N.J. Dep't of Children & Families, Div. of

Youth & Family Servs. v. A.L., 213 N.J. 1, 18 (2013) (quoting E.P., 196 N.J. at 102 and In re Guardianship of K.H.O., 161 N.J. 337, 347 (1999)).

[New Jersey Div. of Child Prot. and Permanency v. S.D., 453 N.J. Super. 511, 518 (App. Div. 2017).]

During or shortly after the entry of the disposition order in the FN matter, appellants filed applications in the non-dissolution matter now under appeal. These applications comprised of plaintiff's grandparent visitation complaint and Jake's custody and parenting time action. Both of these matters were filed under the FD docket. Plaintiffs filed to expand their grandparent visitation to full custody of Nancy. Jake filed for joint custody of Nancy to be shared with his parents, enforcement of parenting time and to compel Shana to return Nancy to New Jersey.

Importantly, our Supreme Court in New Jersey Department of Children & Families, Div. of Youth & Family Servs. v. I.S., determined a trial court has discretion to adjudicate child welfare matters with custody matters at the same time, as long as the parents are not prejudiced. 214 N.J. 8, 39-42 (2013). In I.S., the Court affirmed the trial court's consolidation of a Title 30 action with a custody action. Id. at 41.

Here, nothing in the record indicates the FN and FD matters were consolidated. The disposition order in the FN matter was entered in July 2021.

15

The order references the FD grandparent visitation matter. The order also required "any modification to any of the terms of [the FN] order [would] require a formal motion to [the FN] court with notice to the Office of the Law Guardian (OLG) and the [Division]. The order also stated that the application under FD-04-1234-21 [is] referred back to FD Unit/Judge." The record also demonstrates that the OLG and the Division were notified of the filing of the FD actions by appellants and neither office appeared nor participated in the hearing.

Additionally, there was an indication in the record that the Division's file in the FN matter was released for the parties' review under a protective order and that the order which terminated the FN matter dated July 28, 2021 was moved and accepted into evidence at the hearing. We were unable to locate in the record any order or determination by the trial court pre- or post-hearing that the Division records were admitted into evidence for consideration at the FD hearing.

Procedural due process requires notice and an opportunity to be heard. Mettinger v. Globe Slicing Machine Co., 153 N.J. 371, 389 (1998); see also Doe v. Poritz, 142 N.J. 1, 106 (1995). "Due process is not a fixed concept . . . but a flexible one that depends on the particular circumstances." Doe, 142 N.J. at

106. "Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." Ibid.

The right of cross-examination is a critical component of the adversary system. Luedtke v. Shobert, 342 N.J. Super. 202, 216 (App. Div. 2001) citing Miller v. Henderson, 41 N.J. Super. 15, 25 (App. Div. 1956) ("cross-examination is the most effective device known to our trial procedure for seeking the truth"). Even court appointed experts are subject to cross-examination before their findings may be admitted into evidence. Luedtke, 342 N.J. Super. at 216 citing R. 5:3-3(f).

We conclude the trial court erred by failing to provide the parties with notice that it may rely upon materials in the Division file and by specifically relying upon documents and materials which were not identified or moved into evidence at the hearing. These documents and materials included: (1) the expert report and evaluation of Dr. Cahill in the FN litigation which the court considered to support its decision to continue custody of Nancy with Shana and to deny Jake's parenting time modification request; (2) statements from Division investigators which seemingly were contained in a document in the FN litigation to support the court's decision to deny plaintiff's custody request and to vacate their grandparent visitation order; and (3) documents in the FN litigation that

17

purportedly stated Shana had complied with services offered by the Division and Gladys was on a "campaign to seize custody," to support its order to continue custody with Shana and deny plaintiffs' custody application.

Since appellants were never notified the court may consider information in these documents and the documents were never marked, identified, or moved into evidence pursuant to <u>Rule</u> 1:2-3, we conclude the court erred in relying upon this information when making its custody and parenting time determinations. The parties had no opportunity to prepare or contest the existence or accuracy of this evidence. Nor were they able to cross-examine the proponents of the statements contained in these reports. We are aware of no authority permitting the court to accept and rely upon evidence outside the record when making custody determinations under these circumstances.

In its decision, the court referred to <u>Rule</u> 5:12-4 to support its consideration of the statements and conclusions set forth in the reports of Dr. Cahill and the Division employees. This rule allows the Division to submit into evidence the reports of staff personnel or professional consultants, which typically would be inadmissible hearsay, and permits any conclusions in those reports to be treated as prima facie evidence at any hearing. <u>See</u> <u>R.</u> 5:12-4(d). We conclude the court committed error in this instance because <u>Rule</u> 5:12-4 is

only applicable to proceedings initiated by the Division. In this instance, the hearing concerned two FD non-dissolution custody applications, not the FN proceeding, therefore, the cited rule was not applicable. Therefore, we determine the court's consideration of statements and conclusions set forth in the reports of Division employees and Dr. Cahill was error.

## IV.

We now address Jake's appeal concerning his application to return Nancy to New Jersey. Jake argues the court failed to address or decide his application which requires reversal. We conclude there is merit to this argument.

A parent who seeks to remove a child from this state when the other parent does not consent must demonstrate "cause" for the removal. N.J.S.A. 9:2-2. The legislative intent of N.J.S.A. 9:2-2 is "'to preserve the rights of the noncustodial parent and the child to maintain and develop their familial relationship.'" Bisbing v. Bisbing, 230 N.J. 309, 323 (2017) (quoting Holder v. Polanski, 111 N.J. 344, 350 (1988)).

In Bisbing, the Court interpreted "cause" under N.J.S.A. 9:2-2 as requiring the petitioning parent to satisfy the "best interests analysis . . . set forth in N.J.S.A. 9:2-4(c), supplemented by other factors as appropriate." 230 N.J. at 338 (citing N.J.S.A. 9:2-4(c)). "[T]he primary and overarching consideration"

of the analysis of the factors in N.J.S.A. 9:2-4 "is the best interest of the child." Kinsella v. Kinsella, 150 N.J. 276, 317 (1997); see also Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) ("Custody issues are resolved using a best interests analysis that gives weight to the factors set forth in N.J.S.A. 9:2-4(c).").

Further, Bisbing instructs that in making "the sensitive determination of cause[, a court] must weigh the custodial parent's interest in freedom of movement as qualified by his or her custodial obligation, the State's interest in protecting the best interests of the child, and the competing interests of the noncustodial parent." Bisbing, at 323 (internal quotation marks omitted) (quoting Holder, 111 N.J. at 350).

Since the trial court did not make factual findings or apply the legal principles of Bisbing as required, a remand for a new hearing is necessary. See R. 1:7-4; See also Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594-95 (App. Div. 2016) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)) (finding a court shall state clearly "[its] factual findings and correlate them with the relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s]").

Finally, we are constrained to remand to a different judge. Since "the [judge] previously made credibility findings, we deem it appropriate that the

20

matter be assigned to a different trial [judge]." <u>R.L. v. Voytac</u>, 199 N.J. 285, 306 (2009); <u>see also</u> <u>Matter of Guardianship of R.</u>, 155 N.J. Super. 186, 195 (App. Div. 1977) (remanding to a different trial judge, where "[t]he judge who heard the matter below ha[d] already engaged in weighing the evidence and ha[d] rendered a conclusion on the credibility of the . . . witnesses").

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division